Beatrice S. Burstein, J.
This proceeding [instituted under CPLR articles 75 and 78[1] to vacate an award ("Award”) of a wage adjustment to the police of Nassau County rendered by an arbitration panel ("Panel”) on the grounds that (1) the *615 Panel failed to adhere to the statutory standards prescribed by section 209 of the Civil Service Law, as amended in 1974, and (2) the impartiality of the tripartite Panel was fatally impaired because two of its members were neither neutral nor disinterested, poses issues which have become increasingly significant in the expanding public employment sector of our national economy.
Although traditional principles of labor law furnish guidelines, they provide no exact precedents. To be sure, in public and private employment disputes, arbitration has become the hallmark of an enlightened Federal and State labor policy. (Steelworkers v Warrior & Gulf Co., 363 US 574; Steelworkers v Enterprise Corp., 363 US 593; Steelworkers v American Mfg. Co., 363 US 564.) However, there are clear and well-defined differences between private and public arbitration. In the former, an award may be challenged only on the grounds stated in CPLR 7511 (or, where applicable, section 10 of the United States Arbitration Act [US Code, tit 9, § 10]) and an award may not be vacated because of an arbitrator’s mistakes of judgment which lead to errors of law or fact. (Matter of Lipman [Haeuser Shellac Co.], 289. NY 76; Matter of Wilkins, 169 NY 494; Matter of DeCicco [Viviano], 32 AD2d 541.) This is so because arbitrators are not restricted by rules of law and may consider or reject any tendered evidence. If an award in a private arbitration is challenged, the court cannot inquire into the nature or sufficiency of the evidence which an arbitrator believes relevant or essential.
On the other hand, where a public arbitration award is attacked, the generally accepted theories that employer-employee disputes are best resolved by final and binding arbitration and that the evidence presented to the arbitrator is nonreviewable, are honored, more in the breach than in the observance. Simply stated, unlike awards in private labor and nonlabor arbitration controversies, a public arbitration award such as the one at issue here, must be supported by substantial evidence of record. This means that there is imported into public arbitration the familiar substantial evidence rule of administrative law (4 Davis, Administrative Law Treatise, § 29.02).
The distinction may trace its source to the notion that public arbitration is compulsory and is a creature of express law. The departure from customary standards of judicial review is further rationalized on the theory that in private *616 enterprise, arbitration is a voluntary arrangement to which employees, otherwise free to strike, consent. Public employees, on the other hand, abandon, or are obliged to abandon the right to economic action in return for the sovereign’s willingness to arbitrate disputes with its employees — a concession the State need not make. Indeed, even those who suggest that the right to strike may, or ought to, be clothed with constitutional immunities agree that since there is no constitutional right to "be a policeman”, there is no constitutional, statutory or common-law right to strike to preserve that status. The logic of this distinction is dubious, at best, because no court has yet declared that there is a constitutional right to a particular job in private industry. Less imaginative, but more defensible, is the argument (advanced it may be noted by President Franklin D. Roosevelt, among others) that a strike by public employees disrupts, and may even endanger, the life of the entire community whereas a strike against a private company affects only the combatants and the public has recourse to alternate or substitute supplies or services through competing companies. Obviously, there are no alternative or substitute sources of police services. Nevertheless, the prohibition against a strike by public employees points to the core of the dilemma. If a public servant — a policeman — is prohibited from striking, is it not reasonable and just that when a favorable arbitration award is rendered, it will be inviolate and unassailable? Should a public agency insist upon and defend arbitration as a viable and fair equivalent of the right to strike, punish economic action by suspension and loss of pay (and, sometimes, fines), and then cry "foul” when an adverse award is rendered? While, perhaps, it ought not do so, the quaere is whether it can. This court concludes that, in this case, the petitioner can successfully do so.
Unfortunately, we do not write on a clean slate nor do we have the option to state the law as it should be. Until the Legislature clears the debris from inexact and vague statutes, this court is governed by so much of the legislative intent as it is able to discern, and it must follow existing precedents, no matter how exiguous, even if this leads to a result which we think offends a sense of fairness.
For reasons stated later in this opinion, the award must be remitted to the arbitrators for modification or, at least, clarification (cf. Power of Arbitrator to Correct, or Power of Court to Correct or Resubmit, Non-Labor Award Because of Incom *617 pleteness or Failure to Pass on All Matters Submitted, 36 ALR3d 933), and if a new award is rendered, its validity will probably have to be tested in another court.
We proceed first to the several allegations of the petition. Petitioner urges a number of grounds for vacatur of the Award. The court quickly disposes of one. It is argued that the composition of the Panel was fatally tainted by the participation of Messrs. Greenwald and Cooper.[2] This argument is rebutted by the Civil Service Law (§ 209, subd 4, par [c], cl [ii]) which provides that: "the public arbitration panel shall consist of one member appointed by the public employer, one member appointed by the employee organization and one public member appointed jointly by the public employer and employee organization.”
We note, too, that the selection procedure was properly observed, and the petitioner never objected to the procedure until it raised the issue in its petition. Of course, under a statutory selection procedure providing for but a single neutral member "as a practical matter, the neutral will make the final decision [but] the parties have opportunities for input into the decision-making process” (Barr, The Public Arbitration Panel as an Administrative Agency: Can Compulsory Interest Arbitration Be An Acceptable Dispute Resolution Method in the Public Sector? 39 Albany Law Review 377, 386 [hereinafter "Barr”]). The private views the court entertains concerning the wisdom of appointing unrelenting partisans to serve on a compulsory public arbitration panel, which attempts to resolve an issue charged with a vital public interest, are irrelevant. Clearly, the process of selection of panel members is essentially "political” and, therefore, not within the purview of judicial review (cf. Matter of Astoria Med. Group [Health Ins. Plan of Greater NY.] 11 NY2d 128; see Barr, supra, p 387).
Petitioner charges, with greater merit, that the majority of the Panel exceeded the limits of statutory authority by failing to give appropriate consideration to the criteria of the Civil Service Law (§ 209, subd 4, par [c], cl [v]) and, in particular, failed to consider its ability to pay the amount which was awarded. The statute does support this contention.
*618 Section 209 (subd 4, par [c], cl [v]) of the Civil Service Law provides in pertinent part, that:
"(v) the public arbitration panel shall make a just and reasonable determination of the matters in dispute * * * and shall, so far as it deems them applicable, take into consideration the following and any other relevant circumstances:
"a. comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours and conditions of employment of other employees performing similar services or requiring similar skills under similar working conditions and with other employees generally in public and private employment in comparable communities;
"b. the interests and welfare of the public and the financial ability of the public employer to pay;
"c. comparison of peculiarities in regard to other trades or professions, including specifically (1) hazards of employment; (2) physical qualifications; (3) educational qualifications; (4) mental qualifications; (5) job training and skills;
"d. such other factors which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment.”
The nub of petitioner’s claim is this: the evidence adduced at the arbitration proceeding showed that an 8.5% salary increase would impose a severe financial burden and hardship upon the county and its taxpayers, and result in budget deficit.[3] We cannot determine whether this argument was inartfully and inadequately presented or presented at all but that it was a matter of concern, even if not articulated by the petitioner, is implied by the following statement of arbitrator Cooper: "Perhaps this reasoning [in support of an 8.5% increase] would be less significant had Nassau County been in a position to argue inability to pay. At no time during the course of these hearings was such an argument made nor is there anything in the fact finder’s report which would indicate that such arguments were made during fact finding. As examples, the County did not argue that it could not afford a larger increase; it did not claim that the PBA demanded increase could create a budget deficit; it did not argue that the demanded increase would place an unfair burden on the tax *619 payer. Instead, it argued that a 6.5% increase was fair and reasonable.”[4]
Respondents, of course, rely on the presumption of regularity which attaches to an arbitrator’s award and forcefully contend that arbitrator Cooper’s statement should be read to mean that although the county argued its inability to pay, it failed to persuade the majority of the Panel. The court reads no such implication in arbitrator Cooper’s statement.
The respondents say, further, that judicial review of a compulsory public arbitration award is limited to an inquiry into whether the Panel acted in excess of its authority or in disregard of the statutory standards and since petitioner failed to meet the burden of proof on these issues, its petition must be dismissed. (See Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174.) This general principle, almost' hornbook labor law, would be decisive except for the fact that we deal not with voluntary, consensual arbitration but compulsory arbitration. Here there are no hermetic solutions. The law does not support the respondents’ view. In Mount St. Mary’s Hosp. v Catherwood (26 NY2d 493, supra) the Court of Appeals ruled that: "[T]he essence of arbitration, as traditionally used and understood, is that it be voluntary and on consent. The introduction of compulsion to submit to this informal tribunal is to change its essence * * * The simple and eradicate fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process.”
In a recent decision upholding the constitutionality of the 1974 amendments to section 209 of the Civil Service Law, the Court of Appeals said that a delegation of power by the Legislature to an ad hoc compulsory arbitration panel is constitutional, provided the delegation is accompanied by reasonable and specific standards and safeguards, observance of which by the panel is obligatory, indeed mandatory. (City of Amsterdam v Helsby, 37 NY2d 19, 27, supra.)
In his concurring opinion in City of Amsterdam (supra, p 38) Judge Fuchsberg pointed to the standards of section *620 209 and said that the availability of broad judicial review satisfies the imperatives of due process and thereby complies with constitutional requirements.
"[I]n making their awards in the context of employee and governmental interests * * * each panel operates under the stringent statutory limitations provided by the Legislature alone, and subject to review which includes the substantiality of the evidence and the degree of due process granted to the parties” (pp 40-41; emphasis supplied).
We must conclude that if the Panel failed to consider the county’s ability to pay, the Award is defective because it is violative of a statutory mandate.[5] To resolve this crucial issue, the court must scrutinize what purports to be the "record” of this arbitration hearing. Section 209 (subd 4, par [c], cl [iii]) requires the Panel to:
"hold hearings on all matters related to the dispute. The parties may be heard either in person, by counsel, or by other representatives, as they may respectively designate. The parties may present, either orally or in writing, or both, statements of fact, supporting witnesses and other evidence, and argument of their respective positions with respect to each case. The panel shall have authority to require the production of such additional evidence, either oral or written as it may desire from the parties”.
Since the statute does not channelize the course, nature or method of conducting a hearing or the range and ambit of judicial review, the court must delineate the appropriate criteria (see Barr, supra, pp 390-392). The court concludes that the hearing required by the statute is plenary and' adversary and designed to develop a complete record. It is the kind of hearing which those skilled in administrative law label "quasi-judicial” (see 8 Weinstein-Korn-Miller, NY Civ Prac, par 7803.08; Matter of Hecht v Monaghan, 307 NY 461). The requirements of due process standards, arising out of the involuntary character of compulsory arbitration, call for the tests of substantiality of evidence and procedural fairness (City of Amsterdam v Helsby, supra, p 38; Mount St. Mary’s Hosp. v Catherwood, 26 NY2d 493, 502, supra). Since the arbitrator’s decision in this case was a final determination *621 reviewable under CPLR article 78 and hence, subject to the test of substantial evidence rule, judicial review implicates consideration of the entire record.[6]
What is the record in this case? Despite its purportedly adversary contours, the arbitration hearing here was, in fact, informal and palpably less precise than an administrative proceeding. Critical is the fact that there was no written record. Instead, the court has only an unattractive mosaic of conflicting written and oral statements and affidavits, sophistical arguments and inconsistent, ambiguous and irreconcilable claims as to what information and data was before the Panel on the crucial issue of ability to pay. This forecloses meaningful judicial review since there can be no evaluation of "substantiality” without a record. Plainly, the need for a full record is absolute and inescapable.
Matter of Buffalo Police Benevolent Assn. v City of Buffalo (81 Misc 2d 172) and City of Buffalo v New York State Public Employment Relations Bd. (80 Misc 2d 741, affd in City of Amsterdam v Helsby, 37 NY2d 19, supra) teach further, that an award of a public arbitration panel must be deemed to be an order of the Public Employment Relations Board ("PERB”) for the purpose of review. This being so, the award must be tested by the criteria prescribed by CPLR article 78, and section 213 of the Civil Service Law. Section 213 plainly states that issues specified in question 4 of CPLR 7803, namely questions relating to the substantiality of the evidence supporting a PERB order, are within the permissible scope of the judicial review. (See, e.g., Matter of Yonkers Federation of Teachers v Helsby, 45 AD2d 132; Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd., 44 AD2d 893.) There being no record, we cannot find that the Award is supported by substantial evidence.
It is unhappily evident that the police are victims, not of judicial insensitivity to their rights, but of a complex and technical arbitration proceeding and cannot be the beneficiaries of an Award which is unenforceable because it does not satisfy statutory criteria. This result reflects a need for adequate development of persuasive evidence in any judicial or arbitration proceeding. Lawyers and public officials must learn *622 that while arbitration is essentially an informal process, it does not suggest casual presentation and prosecution any more than it does in a judicial proceeding.
Our final question is whether the Award should be vacated. Here, too, we have no benchmarks. For guidance we turn to the law applicable to private arbitration. In that area the right to correct an award before it becomes final is made clear by the statutory distinction between vacatur of an award and clarification or modification.
In private arbitration an award may be returned to an arbitrator for clarification, modification, etc. (Matter of Ace Mechanical Contrs. v Gevyn Constr. Corp., 33 Misc 2d 338; Matter of Jolson v Forest Labs., 15 AD2d 901.) An award is never final if it leaves open loopholes for future disputes and litigation, is incomplete and uncertain or indefinite and is not full and final on all points. It is equally basic that an award must conform to and fully satisfy the question submitted (5 Am Jur 2d Arbitration and Awards, § 142).
In Matter of Trophy Handbags v Craft Ind. Case Corp. (156 NYS2d 45, affd 3 AD2d 733) it was held that an arbitrator must give the parties an opportunity to offer additional evidence (p 46). More specifically, in Matter of Livingston v Banff, Ltd. (13 Misc 2d 766, 767) the court ruled: "Resubmission to the same arbitrator does not require a full hearing de novo, but the arbitrator may reconsider the matter on the basis of the prior hearing and such additional evidence as hé may require (Matter of First Nat. Oil Corp. [Arrieta], 2 Misc 2d 225, 234, affd 2 AD2d 590; Matter of Trophy Handbags v Craft Ind. Case Corp., 156 NYS2d 45, 46, affd 3 AD2d 733).”
The authority of an arbitrator has been very broadly defined and this includes his right to voluntarily reopen a hearing. In Matter of Big-W Constr. v Horowitz (24 Misc 2d 145, 154, affd 14 AD2d 817) the court stated that: "Whether a case should be reopened for the taking of additional testimony rests within the broad discretion of the arbitrators, and even an abuse of such discretion, in the absence of misconduct, would not be ground for setting aside an award. Before an award can be set aside, there must be an improper refusal to hear testimony pertinent and material to the controversy. (Civ. Prac. Act, § 1462; Gervant v New England Fire Ins. Co., 306 NY 393), or a refusal of an arbitrator to examine witnesses, in which case it would be ‘sufficient misconduct on his part to induce the court to set aside his award’. (Halstead v *623 Seaman, 82 NY 27, 30-31.)” (See, also, Katz v Uvegi, 18 Misc 2d 576, affd 11 AD2d 773.) Apart from any statutory provisions, an award should be corrected by an arbitrator in the interests of justice. (Matter of First Nat. Oil Corp. [Arrieta], 2 Misc 2d 225, 234, affd 2 AD2d 590.)
Accordingly, the court will not vacate the Award; instead it remands the matter to the Panel for formal hearings, to be held forthwith after the entry of the order to be settled hereon. The order shall additionally provide that the Panel shall develop evidence relevant to the criteria of section 209 of the Civil Service Law and make a complete written record of all proceedings, in conformity herewith. This decision is made sua sponte in the absence of a specific request for the relief granted herein.

. Proceedings for judicial review of the award of a public arbitration panel are properly maintainable under CPLR article 78, but not under CPLR article 75 (see Matter of Buffalo Police Benevolent Assn v City of Buffalo, 81 Misc 2d 172; City of Amsterdam v Helsby, 37 NY2d 19, 40-41; [Fuchsberg, JJ; cf. Mount St Mary’s Hosp. v Catherwood, 26 NY2d 493).

. Tri-partite arbitration inevitably involves an element of advocacy by the designees of the interested parties. But it is one thing for a member of an arbitration panel to reflect the views of the party who nominated him and quite another to disregard the arbitrator’s duty to decide the issues fairly and dispassionately.

. It has been suggested that, considering fringe benefits the economic package amounts to a 12.5% increase.

. The court has examined the fact finder’s report dated June 30, 1975, and cannot determine that the issue of inability to pay was argued to and considered by the fact finder.

. Indeed, one commentator, noting the importance of this factor, has stated that ’’responsible evaluation of the government’s 'ability to pay’ may determine the future of compulsory arbitration in the public sector.” (See Barr, supra, p 389; italics supplied.)

. Whether the arbitrators acted in excess of the grant of authority given them by the statute or in disregard of the standard prescribed by the Legislature is, of course, always properly within the scope of judicial review (see Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, supra; Barr, supra, p 391).