In the Matter of GEORGE VOIGT, Individually and as President of the Patrolmen's Benevolent Association of the City of Long Beach, Appellant, v RICHARD J. BOWEN, as City Manager of the City of Long Beach, et al., Respondents.

Second Department, July 12, 1976

*Hartman & Alpert (Richard Hartman* of counsel), for appellant.

*Morris H. Schneider, Corporation Counsel (Guazzo, Silagi, Craner & Perelson, P.C.,* of counsel; *Caesar C. Guazzo* and *Mitchel B. Craner* on the brief), for respondents.

DAMIANI, J. This CPLR article 78 proceeding was converted to an action at law for enforcement of a pay parity provision in a collective bargaining agreement by an order of the Supreme Court, Nassau County, dated July 30, 1975. Petitioner appeals from the judgment of the said court, entered December 17, 1975, which, *inter alia,* denied the relief requested and dismissed the petition.

The City of Long Beach (the City), as a public employer, is required by subdivision 1 of section 204 of the Civil Service Law, a section of the Taylor Law, to "negotiate and enter into written agreements with * * * employee organizations in determining * * * terms and conditions of employment." Pursuant thereto, the City entered into an agreement with the Patrolmen's Benevolent Association of the City of Long Beach on August 1, 1973 as to the pay of patrolmen for the 43-month period from December 1, 1972 to June 30, 1976. The agreement provided specific percentage increases for the first 31 months thereof, and, as to the period from July 1, 1975 through June 30, 1976, "complete parity" with the salary schedule of the Nassau County Police Department, or the pre-existent salary of Long Beach patrolmen, whichever was greater.

In October, 1974, Nassau County entered into negotiations with the representatives of its own patrolmen as to, *inter alia,* the 1975 salary schedule. An "impasse" was declared, followed by mediation, fact-finding and, ultimately, compulsory arbitration pursuant to subdivision 4 of section 209 of the Civil Service Law. An arbitration award of an 8.5% increase, plus fringe benefits, was rendered on July 29, 1975. The matter was thereafter remanded by Special Term with instructions for formal hearings and for consideration of all of the factors set forth in section 209 (subd 4, par [c], cl [v]) of the Civil Service Law, including "the financial ability of the public employer to pay" *(Caso v Coffey,* 83 Misc 2d 614). At the new arbitration proceedings, which consumed 25 days of hearings from September 25, 1975 to March 8, 1976, and at which the financial ability of the County of Nassau was extensively examined, an award was rendered on March 19, 1976, granting a 9.5% increase of salary, plus provision for an additional computed percentage for certain fringe benefits. We have today confirmed that award (see *Caso v Coffey,* 53 AD2d 373 [decided herewith]).

The afore-mentioned parity provision would therefore require a wage increase for Long Beach patrolmen for the year ending June 30, 1976. The City has refused to pay it because of its critical financial plight. It further claims that the parity provision is illegal.

It was held in *Board of Educ. v Associated Teachers of Huntington* (30 NY2d 122, 130) that public employers "must * * * be presumed to possess the broad powers needed to

negotiate with employees as to all terms and conditions of employment * * * '[i]n the absence of an express legislative restriction against bargaining'" for a particular term or condition and that certain provisions in a collective bargaining agreement were valid because there was "no legislation which expressly or even impliedly prevented" negotiating as to them.

The "legislative restriction against bargaining" was elucidated in *Syracuse Teachers Assn. v Board of Educ.* (35 NY2d 743, 744) "to mean that collective bargaining under the Taylor Law (Civil Service Law, § 204, subd. 1) has broad scope with respect to the terms and conditions of employment, *limited by plain and clear, rather than express, prohibitions in the statute or decisional law*" (emphasis supplied).

In *Matter of Susquehanna Val. Cent. School Dist. at Conklin (Susquehanna Val. Teachers' Assn.)* (37 NY2d 614, 616-617), the court, referring to the type of matters interdicted from collective bargaining in the *Huntington (supra)* and *Syracuse (supra)* cases, i.e., those prohibited by "express statute", and by "plain and clear, rather than express, prohibitions in the statute or decisional law", stated:

"Yet even this is not the sum of it.

"Public policy, whether derived from, and whether explicit or implicit in statute or decisional law, or in neither, may also restrict the freedom to arbitrate * * *.

"Key to the analysis is that the freedom to contract in exclusively private enterprises or matters does not blanket public school matters because of the governmental interests and public concerns which may be involved, however rarely that may ever be."

Therefore, in considering the validity of the provision for salary parity with similar employees of a different governmental subdivision, we are required to examine whether that method of resolving a wage dispute was interdicted by express statute, by "plain and clear" statutory or decisional prohibition, or by public policy independent of statutory or decisional law.

Had the parties not arrived at an agreement by collective bargaining, they would have ultimately been required to submit the matter to a public arbitration panel consisting of "one member appointed by the public employer, one member appointed by the employee organization and one public member appointed jointly" (see Civil Service Law, § 209, subd 4,

par [c], cl [ii]). Subdivision 4 (par [c], cl [v]) states that such panel shall, "so far as it deems them applicable", take into consideration specified circumstances, including wages, hours and conditions of employment of employees "generally" in public and private employment in comparable communities. Similarly to be considered, states the statute, are "the interests and welfare of the public and the financial ability of the public employer to pay" (Civil Service Law, § 209, subd 4, par [c], cl [v], subcl b).

We conclude that the parity provision herein was invalid as a "plain and clear", as well as an implicit, violation of that section of the Taylor Law. It is true that the provision was not *expressly* violative since the listed matters are required to be considered by the public arbitration panel "so far as it deems them applicable", and there is no stated requirement that they are to be considered by the parties themselves during collective bargaining negotiations.

We must assume, however, that where there is a resolution of a dispute in the course of public collective bargaining, the statutory considerations, although not specifically mandated at that stage, have been kept fully in mind by the parties. Those matters are essentially relevant per se, and further, the parties know that if not resolved at that stage the matters set forth in the statute must be considered in compulsory arbitration (see *Caso v Coffey,* 83 Misc 2d 614, 620, *supra).*

Where the dispute is not finally determined in the collective bargaining negotiations, and the parties' agreement thereon is limited to a specific method of resolution *in futuro,* we must examine such method to determine whether it provides, even impliedly, for consideration of the standards deemed important by the Legislature. Thus, if the agreement provides for future arbitration, we may safely assume that the arbitrators would include for consideration such elements as the public employer's ability to pay and the wages received by comparable employees "generally" (see *Matter of Board of Educ. v Yonkers Federation of Teachers,* 40 NY2d 268).

Where, however, the agreement provides for a method of resolving the dispute which necessarily and patently forecloses consideration of such items, we are constrained to hold that it is plainly, clearly and implicitly violative both of the Taylor Law and public policy.

Here the dispute was resolved by making Nassau County's, and not the City's financial status a determinative factor.

Likewise, instead of considering wages received by comparable employees "generally", the determination was limited solely to the wage scale of one specific group of employees. Those factors were not authorized by the statute and were unrelated to this bargaining unit. Such method carried the same vice as would an agreement to make a decision by lot. It was, in effect, an abdication of responsibility. Consequently, the 1975-1976 wage schedule dispute remains open for Taylor Law negotiation as it was never properly resolved. (See, also, *City of Albany v Albany Permanent Professional Firefighters Assn.*, 7 PERB, par 7-3079).

The judgment dismissing the petition should therefore be affirmed, without costs or disbursements.

HOPKINS, Acting P.J., MARGETT, TITONE and HAWKINS, JJ., concur.

Judgment of the Supreme Court, Nassau County, entered December 17, 1975, affirmed, without costs or disbursements.