RALPH G. CASO, as County Executive of Nassau County, Petitioner, v JOHN COFFEY et al., Constituting the Nassau County Public Employment Relations Board, et al., Respondents.

Second Department, July 12, 1976

374

*James M. Catterson, Jr. (Joshua A. Elkin, Robert J. Swee-ney* and *Natale C. Tedone* of counsel), for petitioner.

*Bruno Baratta* for John Coffey and others, respondents.

*Hartman & Alpert (Richard Hartman* and *Anthony W. Cornachio* of counsel), for Daniel Greenwald and another, respondents.

HOPKINS, Acting P. J. This CPLR article 78 proceeding was transferred to this court, pursuant to CPLR 7804 (subd [g]), because it presents a question as to the substantiality of the evidence supporting the determination made by a public arbitration panel of three arbitrators appointed pursuant to section 209 (subd 4, par [c], cl [ii]) of the Civil Service Law. The panel made an award, on March 19, 1976, granting a 9.5% raise in the salary schedule of the patrolmen of Nassau County. The petitioner (the County Executive of Nassau County) claims that the award is not supported by substantial evidence, and further that it was not based upon proper evaluation of the criteria contained in clause (v) of paragraph (c) of subdivision 4 of section 209 of the Civil Service Law. The Nassau County Public Employment Relations Board has cross-moved for enforcement of the award.

We confirm the award dated March 19, 1976 and direct its enforcement as an order of the Nassau County Public Employment Relations Board, pursuant to section 213 of the Civil Service Law. The determination of the panel was supported by substantial evidence in accordance with the requirements of the statute.

I

In October, 1974 negotiations were commenced between the County of Nassau and the Nassau County Patrolmen's Benevolent Association (PBA) as to the terms and conditions of employment for the calendar year 1975. The major issue was the PBA's request for general salary increases. No agreement having been achieved, an "impasse" was deemed to exist (see Civil Service Law, § 209, subd 1); mediation (see Civil Service Law, § 209, subd 3, par [a]) followed without success, and thereafter the process of "fact-finding" (see Civil Service Law, § 209, subd 3, par [b]) was undertaken. The fact-finder's report noted the PBA's request of a 30% wage increase for 1975 and the county's offer of a 6.5% increase "in the light of the 6 to 6.5% adjustment effected in the CSEA [Civil Service Employees Association] negotiating unit".[1] Also noted by the fact-finder were the following factors: a rise in the consumer price index from January, 1974 to January, 1975 of 10.1%; that Nassau patrolmen's salaries should be somewhat higher than those of Suffolk County patrolmen, because "Nassau had the

1. CSEA's representation of public employees in labor contract negotiations did not include patrolmen.

earlier development into a first class police force and is staffed by more experienced and more professional officers"; and that Nassau County police have generally received greater increases than other employees of the county, "no doubt in recognition of the hazardous and unusual demands * * * in law enforcement activities." The report concluded that a general increase of 8.5% was warranted, which would have resulted in a $16,720 annual salary for a patrolman at the beginning of his fifth year of service.

The fact-finder's recommendations were rejected by both parties. Pursuant to section 209 (subd 4, par [c]) of the Civil Service Law, the salary issue (as well as another issue not relevant here) was referred to a public arbitration panel consisting of one member appointed by the county, one by the PBA, and one "public member" appointed jointly by the county and the PBA.

Hearings were held by the panel on July 15 and 16, 1975. No minutes were taken. A majority opinion and award were rendered on July 29, 1975, with the member appointed by Nassau County dissenting. The panel awarded a wage increase in the same amount as had been recommended by the fact-finder: 8.5%, based on findings of an increase of 10.1% in the consumer price index in the year ending January, 1975; that the county-proferred 6.5% plus computable fringe benefits of 2.3%[2], a total of 8.8%, fell short of the rise in the cost of living; and that the result of a 6.5% increase would be that salaries for Nassau County police officers would drop substantially below the Suffolk County salary structure. Further, stated the opinion: "At no time during the course of these hearings was * * * an argument made [of inability to pay] nor is there anything in the fact finder's report which would indicate that such arguments were made during fact finding. As examples, the County did not argue that it could not afford a larger increase; it did not claim that the PBA demanded increase could create a budget deficit; it did not argue that the demanded increase would place an unfair burden on the taxpayer."

Section 209 (subd 4, par [c], cl [vi]) of the Civil Service Law, as amended (L 1974, ch 725), relating to policemen and firemen outside of New York City, provides that "the determi-

---

2. Nassau County computed the fringe benefits to constitute a 2.8% increase. However, the opinion noted, 0.5% "is an estimate of the cost of fringes which are intangible and cannot be determined at this time."

nation of the public arbitration panel shall be final and binding upon the parties * * * [and] shall not be subject to the approval of any local legislative body or other municipal authority." However, following the rendition of the July 29, 1975 award, the petitioner instituted a proceeding under CPLR articles 75 *and* 78 to vacate the award, alleging, *inter alia,* the failure of the panel to adhere to the standards prescribed by section 209 (subd 4, par [c], cl [v], subcl b) of the Civil Service Law according to the 1974 amendment (including "financial ability of the public employer to pay"). The Special Term held *(Caso v Coffey,* 83 Misc 2d 614) that: (1) because of the involuntary character of compulsory arbitration, the judicial review of a public arbitration award was maintainable under CPLR article 78 (see CPLR 7803) and not under CPLR article 75, which provides a more limited review of an award in connection with *voluntary* arbitration (see CPLR 7511); (2) without a written record an evaluation of the evidence could not be made; and (3) the failure of the panel to consider the financial ability of the County of Nassau to pay the salary increase violated the express command of the statute. The Special Term therefore remanded the matter to the arbitration panel for the holding of formal hearings on a written record and the submission of evidence relevant to the criteria of section 209 of the Civil Service Law.

Formal *de novo* hearings before the panel were held intermittently on 25 days during the period from September 25, 1975 to March 8, 1976. The evidence ranged far and wide; there were some 3,000 pages of transcripts and voluminous exhibits. Substantially more than half of the hearing was devoted to the issue of the financial ability of the County of Nassau to pay. On March 19, 1976 an award was rendered wherein the panel granted "a general wage increase of 9.5% * * * making the salary for patrolmen at the beginning of the fifth year $16,874.00." An analysis of the accompanying opinion (to which the member chosen by the county again submitted a dissent) indicates that the reasons for the 1% increase above that of the earlier award were that: (1) it had been ascertained, on "the most authoritative evidence", that the cost of living had risen 10.9% in 1974, and not 10.1%, as had been assumed in the original hearings, and (2) the County of Nassau had "concluded a tentative agreement" with the Superior Officers Association (representing police officers above the rank of patrolmen) "which provides a total wage and fringe

increase of 12.3% for the year 1975." It is to be noted that an assumed .2.8% for fringe benefits for PBA members, when added to the awarded 9.5% wage increase, would constitute the same "tentative" total increase granted to the superior officers of Nassau County.

As indicated, the evidence submitted on the issue of the "financial ability of the public employer to pay" was monumental. Thus, evidence was submitted by the PBA relating to the following:

1. *Constitutional limitations on tax and debt:* In 1975 the county had used 191 million of its *tax* limit of 285 million dollars; the formula was such that the tax limit would be raised to 313.7 million dollars in 1976, and substantially more in the following years. In 1975 the county used only 3.9% of its permitted *debt* limit of 10% of five-year average of full real property valuation.

2. *Percentage of tax collection:* The 1975 and 1976 budgets show actual and projected delinquencies at an average of 0.5% (as contrasted to an average in New York City of 7.1%).

3. *Per capita income:* The 1970 census showed that Nassau County's median family's income was $14,122, the third highest in the country and the highest in the State. The 1973 per capita personal income of Nassau residents was apparently the highest of 255 standard metropolitan statistical areas.

4. *Per capita assessed valuation:* The full value per capita assessed valuation in Nassau County, as of August 12, 1975, was the second highest in the State, exceeded only by Westchester County.

5. *Retail sales:* Retail sales for 1975 were expected to be substantially higher than in 1974; the county's witness testified that a million dollars more in sales taxes were expected to be collected in 1975.

6. *Nature of the communities:* 73.6% of the total real property valuation in Nassau County is represented by one-family homes; homes receive preferential tax treatment; prices of homes in the county have increased 13.64% in recent years compared to a New York State average of 12%; equalization rates for homes dropped from 20% in 1971 to 18% in 1975, and as to one-family homes dropped even less.

7. *Economic trends and employment rates:* The national recession was decreasing after reaching bottom in April, 1975, as shown by the comparative statistics relating to gross na-

tional product, industrial production, and employment. The rate of increase of consumer prices was reduced from double-digit figures in 1974 to an annual rate of approximately 6.3% in October, 1975.

8. *Projection for 1976:* The unemployment rate is decreasing; inflation is moderating.

9. *Impact of the increase on taxpayers:* A statistical analysis tended to show that a tax increase to raise an amount far more than necessary to pay for the salary increase was entirely bearable, especially in view of the fact that real estate taxes were deductible for income tax purposes.

The petitioner's evidence to support his claim that the county could not afford more than its 6.5% offer (plus fringe benefits) tended to establish that the county was faced with a budget deficit of approximately 17 million dollars for 1975; that there was a huge increase in the cost of welfare due to the recession; that by 1979 or 1980 the county would reach its constitutional tax limitation, based on a projection of the present imbalance of income and expenses; and that its residents were already very heavily taxed.

In addition, extensive testimony and exhibits were submitted at the hearings as to comparative wages, hours and conditions of employment of other civil service employees, and particularly of patrolmen, indicating that the awarded increase would place the PBA members among the highest paid patrolmen in the nation, especially when prorating their salaries to actual days worked.

The evidence introduced during the 25 days of the hearings, and the detailed analysis thereof in the lengthy majority opinion of the panel, demonstrate that serious and close attention was devoted to all of the matters mandated for consideration by the statute (Civil Service Law, § 209, subd 4, par [c], cl [v]). Hence, we conclude that the panel did not act in excess of the statutory grant of authority or in disregard of the standards prescribed by the Legislature.

## II

We hold that the method of review by the petitioner instituted under article 78 (apparently pursuant to the dictum on review of the earlier arbitration panel award in *Caso v Coffey* [83 Misc 2d 614, n1, *supra*]) was proper, and that the test to be employed is prescribed by CPLR 7803 (subd 4), that is,

whether the determination made at an evidentiary hearing "is, on the entire record, supported by substantial evidence."

Section 213 (subd [a]) of the Civil Service Law declares that "[o]rders of the board made pursuant to this article [article 14] * * * shall be (i) reviewable under article seventy-eight of the civil practice law and rules * * * and (ii) enforceable in a special proceeding, upon petition of such board, by the supreme court." As stated in *Matter of Buffalo Police Benevolent Assn. v City of Buffalo* (81 Misc 2d 172, 173): "[u]nlike the legislative scheme for compulsory arbitration of disputes between nonprofit hospitals and their employees (cf. Labor Law, § 716; and see *Mount St. Mary's Hosp. v Catherwood,* 26 NY2d 493), article 14 of the Civil Service Law and its appended subdivision 4 of section 209 contain no reference to the arbitration enforcement procedures of CPLR article 75."[3]

The compulsory aspect of submission of the issues to a public arbitration panel (see Civil Service Law, § 209, subd 4, pars [b], [c], cl [i]), after unsuccessful mediation and "fact-finding", results in an award which is of a character distinct from an award following a voluntary submission to arbitration. An award growing out of compulsory arbitration, though final and "not * * * subject to the approval of any local legislative body or other municipal authority" (Civil Service Law, § 209, subd 4, par [c], cl [vi]), requires more than the limited review generally available under CPLR 7511 (subd [b]). As stated in *City of Amsterdam v Helsby* (37 NY2d 19, 40-41 [concurring opn of FUCHSBERG, J.]), "in making their awards in the context of employee and governmental interests rather than contractual rights, each panel operates under the stringent statutory limitations provided by the Legislature alone, and subject to review which includes the *substantiality of the evidence* and the degree of due process granted to the parties" (emphasis supplied).

*Mount St. Mary's Hosp. v Catherwood* (26 NY2d 493, *supra),* relating to the provision in section 716 (subd 6, par [b]) of the Labor Law for review of a compulsory arbitration panel's award (involving employees of nonprofit-making hospitals) under CPLR article 75, recognized that the difference between consensual and compulsory arbitration requires a broader

---

3. Similarly, the procedure in New York City (Administrative Code of City of New York, § 1173-1.0 *et seq.)* provides specifically that a collective bargaining award made by an impasse panel shall be governed by CPLR article 75 (see *Patrolmen's Benevolent Assn. of City of N.Y. v City of New York,* 52 AD2d 43).

judicial consideration of an award made in compulsory arbitration than that traditionally afforded to a consensual arbitration board's award.

Thus, the Court of Appeals stated (pp 508-509):

"In short, the device for arbitration is a substitute for a determination of the dispute by an administrative or regulatory agency. As a substitute device, however, its objective may not be accomplished under lower constitutional standards than would be required of an administrative or regulatory agency.

"On this view, CPLR 7511 (subd. [b]), in authorizing review of whether the arbitrator has exceeded his power, by necessary logical extension and without distortion of its literal terms includes review in the case of compulsory arbitration (but only in such case) of whether the award is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record. Such a review is all that the hospital is entitled to obtain; an article 78 (CPLR) review would have no greater scope * * *

\* \* \*

"Such limited review in the article 75 proceeding is saving of time, a desirderatum to achieve the peaceable and prompt resolution of labor disputes. If, for the limited review available to it, the hospital would have to institute another proceeding under CPLR article 78, there would be a needless duplication of summary proceedings. And there would then have to be a disregarding of the statutory directive that the mode of review be under article 75. If perchance, as argued by respondents alternatively, it is true, that on any review based on constitutional limitations affecting an award there must be a plenary action and a *de novo* hearing, then the delays, the proliferation of litigation procedure, and the expenses, approach the intolerable."

Accordingly, article 78 standards of review were imported into the article 75 "statutory directive", in order to preserve the constitutionality of section 716 of the Labor Law. "Otherwise an arbitrator would have a power greater than the Constitution permits the Legislature to delegate to an administrative or regulatory agency, namely, to resolve a dispute or make regulations on less than substantial evidence or without reasonable basis or in disregard of applicable rules of law" *(supra,* p 508), and, in this particular case "a needless duplica-

tion of summary proceedings" would consequently be avoided *(supra,* p 509).

Here there is no necessity for such an importation. As noted above, only article 78 review is specifically provided for by the Taylor Law (Civil Service Law, art 14). There is no problem of "needless duplication" since the petitioner brought this proceeding pursuant to article 78.

There remains the question whether awards of a public arbitration panel are indeed "[o]rders of the [public employment relations] board", and, as such, "(i) reviewable under article seventy-eight of the civil practice law and rules upon petition filed by an aggrieved party * * * and (ii) enforceable in a special proceeding, upon petition of such board" (Civil Service Law, § 213, subd [a]). We note first that the petitioner labels the opinion and award under review as that of "the respondent Nassau County Public Employment Relations Board" (and not merely that of the arbitration panel). Further, the Nassau County Public Employment Relations Board cross-moved to enforce the proper "Opinion and Award of the Arbitration Panel[4] as an order of Respondent Nassau County Public Employment Relations Board".

We consider that the Nassau PERB's application for relief set forth in its cross motion was entirely appropriate. When the dispute remained unresolved after the mediation and "fact-finding" processes provided by the statute, PERB was required to "refer the dispute upon petition of either party to a public arbitration panel" (Civil Service Law, § 209, subd 4, par [c], cl [i]). There is no statutory provision for review by PERB of the panel's award; thus the award is made by the panel as though it were PERB's surrogate. The award must be deemed, in essence, an "order of the board" and thus "enforceable in a special proceeding, upon petition of such board, by the supreme court", as contemplated by subdivision (a) of section 213 of the Civil Service Law.

We see no problem in the fact that "the panel consists of three individuals serving on an *ad hoc* basis with no budget to

---

4. The Nassau County PERB saw a dilemma in the fact that the original award (of 8.5%) of July 29, 1975 was not vacated, but merely remanded, so that it might be construed as coexisting with the later (9.5%) award of March 19, 1976. The cross motion sought "a resolution * * * as to which of the conflicting awards and *orders* shall apply and * * * upon such resolution for an Order compelling the County of Nassau to forthwith implement said award". In our view, it is the March 19, 1976 award which "shall apply".

defend its award", or in the observation that article 78 procedure for enforcement of the award does not "allow the real adversaries to protect their own interests" (see *Matter of Albany Permanent Professional Firefighters Assn. [Corning]*, 51 AD2d 386, 389-390). A court of equity should have no difficulty in resolving these matters since, if need be, independent counsel to enforce or defend the award may be selected by PERB,[5] and a nonjoined "adversary" may be added as a party to the proceeding.

### III

A review of the extensive evidence before the panel demonstrates that the determination under review meets the mandate of CPLR 7803 as it is "supported by substantial evidence". The unresolved dispute was that of the raise in the salary schedule for 1975 over that of 1974. The county offered a 6.5% increase and took the position throughout that any award above that would be arbitrary, capricious and in disregard of the statutory standards. Nevertheless, the panel concluded that the 1974 rise in cost of living of 10.9%, the increases granted to other civil service employees, and particularly to patrolmen in other areas, and, more specifically, the increase given by the same public employer to policemen above the rank of patrolman, warranted a 9.5% increase.

The major portion of the hearings was directed to the issue of the financial ability of Nassau County. We conclude that the panel's finding that the county was financially able to pay the award is supported by substantial evidence.

We have not overlooked the point that the PBA's evidence as to Nassau County's financial ability included the Moody rating of "A-1" for its securities. We take judicial notice of the fact that, subsequent to the award, in May, 1976, the Moody rating was reduced to "A". Whatever relevance this may have in determining the financial ability of the county to pay in future disputes, we believe it has none in the determination of the dispute concerning an increase of the wage schedule beginning January 1, 1975 — a dispute that normally should have been resolved long before May, 1976.

Hence, we confirm the determination and direct its enforcement.

---

5. Application for compensation for counsel thus selected may be made to the county (cf. *Cahn v Town of Huntington*, 29 NY2d 451).

384

MARTUSCELLO, MARGETT, DAMIANI and HAWKINS, JJ., concur.

Award of a public arbitration panel, dated March 19, 1976, confirmed insofar as it is sought to be reviewed, and proceeding dismissed on the merits; cross motion for enforcement of the said award as an order of the Nassau County Public Relations Board granted, all without costs or disbursements.