In the Matter of the Arbitration between the CITY OF SCHENECTADY, Appellant, and CITY FIRE FIGHTERS UNION, LOCAL 28, I.A.F.F., AFL-CIO, Respondent.

Third Department, March 4, 1982

### APPEARANCES OF COUNSEL

*Trachtenberg & Rothschild (Bruce S. Trachtenberg* of counsel), for appellant.

*Grasso & Grasso (Frank N. Grasso* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

The City of Schenectady and the City Fire Fighters Union, Local 28, I.A.F.F., AFL-CIO (union), entered into a three-year collective bargaining agreement, effective January 1, 1980, covering the terms and conditions of employment of the city's fire fighters. Simultaneously, an agreement containing the same benefits was entered into with the Schenectady Patrolmen's Benevolent Association (PBA). These agreements were the result of joint negotiations conducted between the city, the union, and the PBA. The agreement between the union and the city contained a provision that "it is expressly agreed that there will be no disparity in remuneration between employees covered by

this Agreement and the employees of the Police Department of comparable rank, during the term hereof". A corresponding provision was included in the agreement between the city and the PBA. During the 12-year period between the enactment of the Taylor Law (Civil Service Law, art 14, § 200 *et seq.*) and the execution of these agreements, the city had always engaged in joint negotiations with the representatives of its fire fighters and policemen, and each resulting agreement contained such a parity clause.

In September, 1980, following a dispute and renewal of negotiations concerning overtime between the city and the PBA, a supplementary agreement was entered into between those parties, modifying the original agreement to increase compensation for overtime from straight time to time and one half. Upon the city's refusal to afford the same additional remuneration to its fire fighters, the union initiated the grievance and arbitration procedures provided in its agreement. The arbitrator's award determined that the parity provision applied and directed its enforcement. Special Term refused to grant the city's motion to set aside the award on the grounds that the enforcement of the parity provision of the agreement was against public policy, and this appeal ensued.

The agreement between the city and the union now under review was entered into voluntarily by the parties as a result of a collective bargaining process mandated under the Taylor Law, and in conformity with its expressed policy in favor of free negotiations leading to collective bargaining agreements between public employers and the representatives of their employees and provisions for the resolution of post-agreement disputes by arbitration (Civil Service Law, § 200). However, because labor relations between public employers and their employees deeply affect the public interest and are matters of public concern, their freedom to contract is subject to restrictive policies which reflect such public interest and concern (*Board of Educ. v Areman,* 41 NY2d 527, 531; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.],* 37 NY2d 614). The judicial power to invalidate provisions of public employment collective bargaining

agreements, or arbitration awards enforcing them, on the ground of public policy is also limited in scope. "Only when the award contravenes a strong public policy, almost invariably involving an important constitutional or statutory duty or responsibility, may it be set aside" (*Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898, 899). It has also been stated that "there are now but a few matters of concern which have been recognized as so intertwined with overriding public policy considerations as to either place them beyond the bounds of the arbitration process itself or mandate the vacatur of awards which do violence to the principles upon which such matters rest" (*Matter of Sprinzen [Nomberg],* 46 NY2d 623, 630, citing *Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist., supra*).

Two basic public policy objections have been expressed regarding provisions mandating parity of treatment among groups of public employees, namely: (1) a provision requiring parity for all such groups inhibits a public employer from entering into later negotiations with one of the groups on the merits of its particular demand and thus limits "the full range of negotiations to which the city is entitled under the Taylor Law" (*Matter of Doyle v City of Troy,* 51 AD2d 845; see, also, *Matter of City of New York [Patrolmen's Benevolent Assn. of City of N. Y.],* 10 PERB, par 3003); and (2) once having negotiated additional benefits for one group, the employer is foreclosed from negotiating on the demands for equality of treatment by other groups entitled to parity under the agreement. Thus, that dispute is resolved without consideration of the "interests and welfare of the public and the financial ability of the public employer to pay", and those other factors set forth in section 209 (subd 4, par [c], cl [v]) of the Civil Service Law, as required in compulsory "interest arbitration" upon impasse (see *Matter of Voigt v Bowen,* 53 AD2d 277, 280-281).

We recognize that the foregoing evils may indeed flow from the incorporation of provisions in public employee collective bargaining agreements mandating equality of treatment among groups of such employees. Nevertheless, we read the decisions in *Matter of Port Jefferson Sta.*

*Teachers Assn. v Brookhaven-Comsewogue Union Free
School Dist. (supra), Matter of Niagara Wheatfield Admin-
istrators Assn. (Niagara Wheatfield Cent. School Dist.)* (44
NY2d 68), and *Matter of Board of Educ. v Yonkers Federa-
tion of Teachers* (40 NY2d 268), as a rejection of any per se
invalidation of such clauses, and to require a case-by-case
examination of the specific provisions in the context of the
circumstances of each case. Notably, the provision in the
agreement in *Niagara Wheatfield,* tying in administrators'
salaries to teachers' salaries in the school district, embod-
ied the very same potential vices reflected in a parity
provision. It equally could have limited the employer's
bargaining discretion in its negotiations with one group,
and the grievance arbitration award enforcing that provi-
sion was also devoid of any consideration of factors of the
"public welfare" and the employer's "ability to pay". Yet,
the court in *Niagara Wheatfield* refrained from invalidat-
ing the tie-in provision. It held that the arbitration award
enforcing it was not violative of public policy because its
application was limited in time, its existence had not in
fact prevented the employer from successfully negotiating
and concluding an agreement with one of the groups, and
there was no evidence that its enforcement had in fact
imperiled the employer financially.

Similarly, in *Matter of Board of Educ. v Yonkers Federa-
tion of Teachers (supra)* and *Matter of Port Jefferson Sta.
Teachers Assn. v Brookhaven-Comsewogue Union Free
School Dist. (supra),* grievance arbitration awards enforc-
ing contractual clauses on job security and mandating
against reduction in the staff of specialist teachers each
invaded the employer's discretion on such matters, and
failed to reflect consideration of the interests and welfare
of the public and the financial status of the employer. The
arbitration awards were nevertheless upheld because the
provisions in question were limited in time, were otherwise
reasonable, and enforcement thereof was not shown signif-
icantly to have impacted upon the public purse.

Consistent with the rationale of the foregoing cases, we
find sufficient factors present in the instant case upon
which to uphold the arbitrator's award enforcing parity.
The award is reasonably limited in time, for the balance of

the three-year contract. The actual resolution of the dispute with the PBA concerning overtime refutes any conclusion that the provision had impaired the city's ability to negotiate that dispute. There is nothing in the record to show that during the balance of the term of the agreement significant overtime work assignments will be required of the city's fire fighters, or even if so, that remuneration therefor at the additional rate will imperil the city's finances. Apparently, for some 12 years, the city has found it to be productive of harmonious public employee relations and consistent with financial prudence and the public safety to negotiate jointly with the union and the PBA and to include within the agreements thereby achieved a provision for equality of remuneration. We decline now to determine that the city was prevented from doing so, as a matter of public policy.

Accordingly, the order and judgment of Special Term denying the city's motion to vacate the arbitration award should be affirmed.

MAIN, J. P., CASEY, YESAWICH, JR., and WEISS, JJ., concur.

Order and judgment affirmed, with costs.