Breitel, J.
At issue is the constitutionality of section 716 of the Labor Law, providing among other things for the compulsory arbitration of disputes in labor contract negotiations with private voluntary or nonprofitmaking hospitals. Mount St. Mary’s Hospital, such a hospital in dispute with a labor union, brought this action for a declaratory judgment to invalidate the compulsory arbitration features of the statute. It appeals as of right on constitutional grounds from adverse decisions sustaining the statute (CPLR 5601, subd. [b]).
Section 716 (L. 1963, ch. 515, § 5, as amd. by L. 1969, ch. 526, §§ 1-3) provides that every collective bargaining contract *498 between employees and nonprofitmaking hospitals or residential care centers shall be deemed to include provisions for mediation and final binding arbitration, at the request of both parties, or by motion of the State Industrial Commissioner, of disputes arising in the course of negotiating terms of a new collective bargaining contract (subds. 1, 3, par. [b]). Even if there is no existing collective bargaining agreement there is a similar procedure for compulsory arbitration provided to mandate the terms of a collective bargaining contract between the parties (subd. 4). Grievances, as defined, arising out of an existing collective bargaining contract are also subject to arbitration, at the request of either party (subds. 1, 2). It is interesting to observe that in the last instance either party may invoke compulsory arbitration, in contrast to the situation where the making of a contract is in dispute, in which case only the Industrial Commissioner may order arbitration if both parties have not agreed to such arbitration. Application to confirm, modify, correct or vacate an arbitration award shall be made in accordance with CPLR article 75, the article governing' arbitration generally (subd. 6, par. [b]).
After protracted negotiations, initiated in 1965, the hospital failed to reach a collective bargaining agreement with the employees’ bargaining representative (Buffalo and Western New York Hospital and Nursing Home Council, AFL-CIO). Following unsuccessful mediation, the Industrial Commissioner directed that the dispute be submitted to compulsory arbitration pursuant to section 716. One William A. Hazell was originally appointed arbitrator, but his designation was withdrawn during the pendency of the proceeding in Special Term and the State Mediation Board was designated as arbitrator in his stead.
Thus far the hospital has not submitted to arbitration. It urges that review of the arbitrator’s decision under CPLR article 75, the only mode of review expressly provided by section 716, is inadequate to provide the hospital due process of law under Federal and State constitutional limitations (H. S. Const., 14th Arndt., § 1; N. Y. Const., art. I, § 6). Because article 75, if given a broad rather than a narrow interpretation, encompasses a standard of review sufficient to afford the parties due process in the context of compulsory arbitration as mandated *499 by section 716 of the Labor Law, the statute is valid and the order of the Appellate Division should be affirmed.
Although two cases involving section 716 have been before the court, neither necessarily involved the statute’s constitutionality or the narrower question of scope of judicial review of awards in compulsory arbitration. Thus, Long Is. Coll. Hosp. v. Catherwood (23 N Y 2d 20) held that questions of certification of bargaining representatives were not subject to arbitration as “ disputes ”. In Park Ave. Clinical Hosp. v. Kramer (19 N Y 2d 958, affg. 26 A D 2d 613) the court sustained a determination that a constitutional challenge was premature, as the union there had only filed a petition for certification as bargaining agent, and there had been no employee vote, no certification or negotiation, and most important, no bargaining impasse ór order to arbitrate. The particular issue of the constitutionality of judicial review afforded arbitration awards under section 716 was not at issue or considered.
Compulsory arbitration to resolve labor disputes, and to resolve or avoid work stoppages, particularly in industries affected with a large and direct public interest, such as the service utilities and railroads, has been discussed through most of the decades of this century, especially between the two world wars. The notion has been said to be abhorrent both to labor and management, suggestive of excessive government control of labor relations and loss of freedom to determine one’s own economic fate. As a result compulsory arbitration has been used hardly at all and there is a dearth of legal analysis and precedent in the courts to illuminate the principles to be applied to this drastic remedy.
Initial delays and litigation have attended upon this State’s legislative efforts to avert labor stoppages and strife in the voluntary hospital field (see, e.g., Long Is. Coll. Hosp. v. Catherwood, 23 N Y 2d 20, supra; Park Ave. Clinical Hosp. v. Kramer, 19 N Y 2d 958, supra). The reason is plain. The problems are new and especially troublesome because they involve the illegalization of the right to strike by private workers in hospitals and, therefore, the necessity of substitute provision to safeguard their economic rights and to offset the curtailment of their bargaining power.
*500 In the present case it is the employing hospital which has resisted the newly created machinery for resolving.the disputes with the labor union to which it has been adversary. On the other hand, the labor union, deprived of the right to strike, has sought to avail itself of the dispute-determination machinery by certification of labor representatives, negotiation, mediation, and, finally, compulsory arbitration.
At the inception it should be observed that the essence of arbitration, as traditionally used and understood, is that it be voluntary and on consent. The introduction of compulsion to submit to this informal tribunal is to change its essence. (Domke, Commercial Arbitration, p. 5.) It is very easy to transfer, quite fallaciously, notions and principles applicable to voluntary arbitration to “ compulsory” arbitration, because, by doubtful logic but irresistible usage, both systems carry the descriptive noun ‘ ‘ arbitration ’ ’ in their names. The simple and ineradicable fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process.
For the reasons indicated, provisions for compulsory arbitration of labor disputes have not been widely used in the United States (see, generally, Jones, Compulsion and the Consensual in Labor Arbitration, 51 Va. L. Bev. 369, esp. at pp. 372, 388-392). An early compulsory arbitration statute, enacted in the State of Kansas, was declared unconstitutional by the United States Supreme Court insofar as it applied to businesses preparing food for human consumption (Wolff Co. v. Industrial Ct., 262 U. S. 522) and coal mining (Dorchy v. Kansas, 264 U. S. 286). The underpinnings for the view concerning industries affected with a public interest have, of course, since then been severely, if not fatally, weakened (see Lincoln Union v. Northwestern Co., 335 U. S. 525, 535-537).
Interest by the States in compulsory labor arbitration surged, however, after World War II, when several enacted compulsory arbitration statutes, and barred strikes in public utilities (see Note, Compulsory Arbitration of Labor Disputes in Public Utilities: A Beview of Becent Decisions, 23 Temple L. Q. 221 *501 [1949-1950]). Their significance, however, has been severely limited because since enactment at least one such statute has been held to conflict with the National Labor Relations Act (Bus Employees v. Wisconsin Bd., 340 U. S. 383).
Litigation in the State courts arising from compulsory arbitration statutes has concentrated on the question of delegation of legislative power, and the necessity for legislated standards to guide the arbitrators (see Ann.— Constitutionality of Arbitration Statutes, 55 ALR 2d 432, 445-449). The question of a constitutionally mandated judicial substantive review of an award in compulsory arbitration has rarely arisen because the statutes have generally made provision for such review. Thus, the New Jersey statute provides for a judicial determination of whether the facts found by the arbitrator were supported by “ any evidence ” which has been construed to require substantial evidence (N. J. Stat. Ann. 34:13B-23; New Jersey Bell Tel. Co. v. Communication Workers, 5 N. J. 354, 377-378). Other States provide for judicial review to determine whether the award is unreasonable as not supported by the evidence (Fla. Stat. Ann., § 453.10'[1]; Ind. Stat. Ann., § 40-2412; 43 Pa. Stat., § 213.13, subd. [h] [2]; Wis. Stat. Ann., § 111.60, subd. [3][3]). (See, also, Neb. Rev. Stats, of 1943 [1968 Reissue], §§ 48-801 to 48-836, creating a Court of Industrial Relations to arbitrate labor disputes in government service of a proprietary nature, and public utilities, and providing for review by the Nebraska Supreme Court in the same manner as in equity cases [§ 48-812].) This practice among the States to provide for substantive review of awards in compulsory arbitration is, of course, at least of great practical significance.
The model for section 716, a Minnesota statute providing for mandatory arbitration of disputes and grievances in nonprofit-making hospitals, was upheld against the challenge of the *502 employees (Minn. Stat. Ann., §§ 179.35-179.39; Fairview Hosp. Assn. v. Public Bldg. Serv. Union, 241 Minn. 523). Although the statute provided that the award was final and made no provision for judicial review, the constitutional attack was based only on equal protection of the laws and the contention that arbitration was unconstitutionally limited to issues of maximum hours of work and minimum hourly wages. The Minnesota court did not discuss the issue of judicial review, and there appears to be no Minnesota case determining whether an arbitration award is subject to judicial review. A statutory requirement that the determination be final, such as in the Minnesota case, does not necessarily preclude judicial review for substantiality of the evidence or procedural fairness (see 4 Davis, Administrative Law Treatise, §§ 28.13, 28.20).
Turning from the States to the national scene, the Federal Railway Labor Act provides for the compulsory arbitration of “ minor ” disputes (grievances as defined in § 716) growing out of existing contractual agreements (IT. S. Code, tit. 45, § 153). The limited review afforded is strikingly similar to that under CPLR article 75 as applied to voluntary arbitrations, and the reviewing court does not determine the substantiality of the evidence (see IT. S. Code, tit. 45, § 153, subd. First, par. [p]). The issue of scope of review has been litigated, but only, however, as a matter of statutory construction (see, e.g., Gunther v. San Diego & A. E. Ry. Co., 382 U. S. 257, 261, 263-264; Trainmen v. Chicago R. & I. R. R. Co., 353 U. S. 30, 33-39). Significantly, however, “ major ” disputes, involving the negotiation of new contracts, are not subject to compulsory arbitration (U. S. Code, tit. 45, §§ 155, 157; 51A C. J. S., Labor Relations, § 410).
The only other discoverable instance of Federal compulsory arbitration also involved the railroad industry. A special act was adopted in 1963 providing for the compulsory arbitration of a dispute involving the reduction of train crews in response to technological advances (Public Law 88-108, 77 U. S. Stat. 132 [Aug. 28, 1963]). The decision of the arbitrators, binding for two years, was upheld upon constitutional attack (Brotherhood of Loc. Fire. & Eng. v. Chicago, B. & Q. R. R. Co., 225 F. Supp. 11, 18, affd. 331 F. 2d 1020, cert. den. 377 U. S. 918). Although, significantly, the court noted that it was not empowered to review the award for substantiality of the evidence, there was no dis *503 cussion of the constitutional implications of the limited judicial review, but only of Congressional power to compel submission of the dispute to arbitration.
The resolution of the issue of adequacy of judicial review, then, must be made, largely, without aid of indicative judicial precedent.
Whether the role of the arbitrator established by section 716 be characterized or treated as administrative, as quasi-legislative, as quasi-judicial, or simply sui generis, the arbitrator’s power to write new contracts for the parties would appear to work a substantial interference with property rights, under almost any traditional criterion, in the sense of impinging on the ‘ ‘ freedom of contract ’ ’ and because of the consequential effect on the employer’s resources. The hospital, however, does not argue that the State lacks the power to so regulate hospital affairs. It argues, rather, that by empowering the Industrial Commissioner to mandate arbitration, and the arbitrator, in effect, to write collective bargaining agreements for the parties, due process of law requires that the awards of the arbitrator be judicially reviewable for errors of law, competency and substantiality of evidence, as well as arbitrary and capricious conduct.
The constitutionally required breadth of review for an administrative, quasi-legislative, or quasi-judicial determination as distinguished from a particular requirement mandated by statute, has never been set with a comprehensiveness that would provide an unequivocal guide for this case. As noted by Professor Davis, the Supreme Court’s “ technique for leaving the constitutional question open is simply to review to the extent that the Constitution might require review, no matter how clear the statute may be in cutting off review ’ ’ (4 Davis, op. cit., supra, § 28.18, p. 93). Review by the Supreme Court has varied markedly. The court has declined to review an order of the National Mediation Board certifying a union as bargaining representative (Switchmen’s Union v. Board, 320 U. S. 297). Yet, it has also held in rate-fixing cases that the Constitution mandates de novo determination of facts underlying the rate (see Ohio Val. Co. v. Ben Avon Borough, 253 U. S. 287). Although never overruled, this requirement of de novo review has evidently ebbed in the Federal courts, leaving as a residuum *504 the substantial evidence test (see 4 Davis, op. cit., supra, § 29.09, esp. pp. 163-173).[4]
In this State, the Ben Avon doctrine was once accepted and applied in a utility rate case (Staten Is. Edison Corp. v. Maltbie, 296 N. Y. 374; see, also Benjamin, Review of Administrative Adjudication, 48 Col. L. Rev. 1, 19-36). In cases reviewing minimum wage orders under section 657 of the Labor Law, however, the substantial evidence test has been applied in response to legislative direction for judicial review of issues of law without any reference to constitutional requirements (see Matter of Wells Plaza Corp. [Industrial Comr.] 10 A D 2d 209, 217, affd. 8 N Y 2d 975; cf. Matter of Kiamesha Concord v. Catherwood, 28 A D 2d 275). Judicial review has been denied, *505 however, when precluded by statute and the administrative determination has involved no substantial property right (see Matter of Guardian Life Ins. Co. v. Bohlinger, 308 N. Y. 174, 179-181, but see Insurance Law, § 34, as amd. by L. 1956, ch. 932; Alcoholic Beverage Control Law, § 121, cf. Szold v. Outlet Embroidery Supply Co., 274 N. Y. 271, 279-280).
There is no doubt that a legislature may establish a tribunal, other than a court, to hear and determine disputes even where substantial property rights are involved, but there must be due process of law, both substantive and procedural. Nor, as has been said, is due process of law necessarily judicial process, but it must be a due process of law. In the case of arbitration, by definition applicable to voluntary arbitration, and therefore transferable to compulsory arbitration, if done unthinkingly, the arbitrators are not bound by rules of law or the rules of evidence. Hence, if the creation of a compulsory arbitration tribunal is governed by no more than the rules applicable to consensual arbitration, the relevancy of due process limitations in their literal sense is quite eliminated. Section 716 certainly makes clear that consensual arbitration was the mode to which its draftsmen’s attention was directed. This, at least, is demonstrated by the statutory directive to review awards under CPLR article 75. That article, as had its predecessors, applied to arbitration a traditionally limited scope of review, appropriate to consensual arbitration, confined largely to specified kinds of misconduct by the arbitrators (CPLR 7511), and, of course, without review of determinations of law or fact (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7511.11).
But, if, indeed, the Legislature purported to provide ad hoc arbitration tribunals to resolve contract negotiation disputes without limitation to rules of law, it would have acted unconstitutionally. Nor is the matter made the simpler by characterizing the power placed in the charge of the arbitrators as quasi-legislative rather than quasi-judicial. For, in that event, npt only must there be standards to guide the delegate body, but there must be judicial oversight, under rules of law, to assure that there is a reasonable basis for the action by the delegate body in compliance with the legislative standards.
This court said as much in Matter of Guardian Life Ins. Co. v. Bohlinger [supra, at p. 183): “ That is not to say, however, *506 that there is to be no judicial scrutiny whatsoever. Even where judicial review is proscribed by statute, the courts have the power and the duty to make certain that the administrative official has not acted in excess of the grant of authority given him by statute or in disregard of the standard prescribed by the legislature. (Cf. Matter of Barry v. O’Connell, 303 N. Y. 46, 52; People ex rel. Metropolitan Life Ins. Co. v. Hotchkiss, 136 App. Div. 150.) So, here for instance, the courts will decide whether or not the Superintendent, in reaching his conclusion, employed the standard fixed by the statute, namely, whether the property purchased by Guardian was or was not ‘ requisite for its convenient accommodation in the transaction of its business.’ There can be no doubt here that the Superintendent did make his determination solely with that standard in mind. Not only did he explicitly state that Guardian’s present New York City quarters ‘ are [not] inadequate for the convenient transaction of its business,’ but he made findings necessarily leading to the conclusion that the purchase was not required for the convenient accommodation of the company’s business. ’ ’ Recently this court reaffirmed this view on the limited review of quasi-legislative decisions. Thus, in Matter of Lakeland Water Dist. v. Onondaga County Water Auth. (24 N Y 2d 400, 408): “ The petitioners are not, of course, remediless. They may challenge rate increases made by the Authority on any of the grounds open to judicial review of quasi-legislative decisions, namely, that the appellant acted in disregard of statutory standards, in excess of its grant of authority, in violation of due process or in a discriminatory manner. They may also attack the constitutionality of the statute delegating power to act.”
Of course, the arbitrator’s power to create and impose a contract for the parties necessarily involves control over substantial property rights. Although policy and evidentiary reference points are set for the arbitrator in arriving at this award under the instant statute (Labor Law, § 716, subd. 7, as amd. by L. 1969, ch. 526, § 3), there is no explicit requirement of an evidentiary minimum or, for that matter, of support in the record. Nor is there express provision for review of the award under these standards by any tribunal, whether administrative or judicial, of the substantiality of the evidence or of support in the record, as distinguished from matters which go to the purity *507 or integrity of the arbitrational process, such as, partiality, fraud, or, in a qualified sense, excess of power. Nor, for that matter, is express provision made for review of issues of law involved in the arbitrator’s award, as would be allowed ordinarily in the case of review of action by administrative agencies.
Due process of law requires, however, that the contract imposed by the arbitrator under the power conferred by statute have a basis not only in his good faith, but in law and the record before him (see Noyes v. Erie & Wyoming Farmers Co-op. Corp., 281 N. Y. 187, 194; Matter of Small v. Moss, 277 N. Y. 501, 507; Matter of Elite Dairy Prods. v. Ten Eyck, 271 N. Y. 488, 498; cf. Long Is. Coll. Hosp. v. Catherwood, 23 N Y 2d 20, 36, n. 3, supra). The arbitration article of CPLB has never been construed to include such a review, but, of course, there was never occasion for such review, with respect to consensual arbitration. Indeed, none was necessary or would be appropriate for the minimal review of awards to which the parties voluntarily subject themselves. Parties in voluntary agreement are not limited, except for rare matters contrary to public policy, from agreeing to anything they wish.
Accepting the fact that article 75 was drafted and applied to consensual arbitration as a matter of legislative history, it is still appropriate to examine its language to determine whether the Legislature had the power by its enactment of section 716, to adapt it, in effect, to the special uses and needs of compulsory arbitration. If the language is, indeed, broad enough to permit such adaptation, section 716 is not only implemented rationally but is saved from constitutional invalidity.
CPLB 7511 (subd. [b]) provides in part: “ 1. The award shall be vacated on the application of a party * * * if the court finds that the rights of that party were prejudiced by: * * * (iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made ; or”.
Because the power of exclusive and final determination by the arbitrator covers all issues of law and fact, the question of an arbitrator’s acting in excess of power is determined solely by the terms of the submission to him of present disputes or the conformity of the demand for arbitration with the arbitration *508 clause covering future disputes (8 Weinstein-Korn-Miller, op. cit., pars. 7511.18-7511.20).
But because of due process limitations affecting compulsory arbitration, the arbitrator is necessarily circumscribed by the data or evidence to support the award made by him. His power derives not from any formal submission or demand for arbitration, voluntarily effected by the parties, but from the statute which mandates upon the parties the arbitration or the agreement for arbitration. Consequently, the arbitrator must be limited by the same constitutional requirements which limit the statute conferring power on him. Otherwise an arbitrator would have a power greater than the Constitution permits the Legislature to delegate to an administrative or regulatory agency, namely, to resolve a dispute or make regulations on less than substantial evidence or without reasonable basis or in disregard of applicable rules of law. True, a legislature could adopt directly regulatory standards for an industry affected by a public interest, and a reasonable basis or equally rational standard, however defined, would suffice, but still there must be such a basis and a basis generally reviewable in a court of law. Notably, the scheme of section 716 is not to establish, directly, minima of conditions for the industry, but to provide for the resolution of contract negotiation disputes about conditions in the industry on the basis of evidence, hearings, and a record made. In short, the device for arbitration is a substitute for a determination of the dispute by an administrative or regulatory agency. As a substitute device, however, its objective may not be accomplished under lower constitutional standards than would be required of an administrative or regulatory agency.
On this view, CPLB 7511 (subd. [b]), in authorizing review of whether the arbitrator has exceeded his power, by necessary logical extension and without distortion of its literal terms includes review in the case of compulsory arbitration (but only in such case) of whether the award is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record. Such a review is all that the hospital is entitled to obtain; an article 78 (CPLB) review would have no greater scope and there is no basis for extension of the doctrine of the Ben Avon and Staten Island cases (supra) allowing de novo *509 review by way of an action in equity. Nor does the hospital argue for any greater review.
Such limited review in the article 75 proceeding is saving of time, a desideratum to achieve the peaceable and prompt resolution of labor disputes. If, for the limited review available to it, the hospital would have to institute another proceeding under CPLB article 78, there would be a needless duplication of summary proceedings. And there would then have to be a disregarding of the statutory directive that the mode of review be under article 75. If perchance, as argued by respondents alternatively, it is true, that on any review based on constitutional limitations affecting an award there must be a plenary action and a de novo hearing, then the delays, the proliferation of litigation procedure, and the expenses, approach the intoleraable. Moreover, this alternative suggestion by respondents rests on reasoning associated with the. now dubious rule in the Ben Avon and Staten Island cases, (supra).
Both in analysis and in such precedents as are available the discussion has ranged over tests that have been categorized as based in reason, based on an evidentiary record, as not being arbitrary, or as being supported by substantial evidence. Whether one test or another has been suggested or discussed turned on the issue involved or because an explicit statute controlled. If the questioned administrative action was determinative of a dispute in the classic sense then one test was appropriate. If the administrative action involved regulatory or quasi-legislative powers then other tests were applicable. The question, then, is in what category fall the matters to be resolved by compulsory arbitration under section 716.
It is immediately evident that there may be a difference whether the controversy is one arising under an existing collective bargaining agreement, or with respect to the writing of a new agreement. Section 716 defines separately grievances and disputes as described earlier. A grievance under an existing agreement is an issue under a limiting arbitration clause to which a substantial evidence test might be appropriate. On the other hand, a dispute arising from a failure to reach a collective bargaining agreement is quite another matter. Such a dispute is not referable to an agreement, an arbitration clause, or *510 other fixed terms of reference. The parallel is much closer to a regulatory or quasi-legislative resolution of the conditions of employment. In such event the test perforce must partake more of the elements associated with the validation of an exercise of legislative power under the standards expressed in the statute since the 1969 amendment (§ 716, subd. 7; L. 1969, ch. 526, § 3). The award may not be arbitrary or capricious, and this indirect exercise of the police power by the arbitrators must be justified by the public interest and reasonable conditions to effect that interest. Obviously, the arbitrators are not empowered to adopt any plan for the conditions of employment simply to satisfy or meet the wishes either of employer or employees. Given a reasonable basis for the award the court’s power to review, however, under any theory or by any procedure, ceases.
On this interpretation, constitutional limitations are satisfied by the statute for the arbitrators may do no more than the Legislature could, and the review power is limited to the same power that exists to review legislative or quasi-legislative acts. This conjunction of judicial review in what is denominated an arbitrational process is not surprising, if one recognizes that section 716 has devised a unique procedure for the admixture of administrative, regulatory, and quasi-judicial functions. In that sense, the procedure is sui generis and the fact that article 75 is by itself appropriate only to consensual arbitration should neither require the statute to be condemned as invalid nor, on the other hand, require translation of the concepts of consensual arbitration to compulsory arbitration as if there were no difference between the two. There is a difference, but the Legislature had the power to weld the two to the extent that they are compatible and the language of the statutes and the constitutional limitations permit. Giving the ‘ ‘ excess of power ” clause in section 7511 of CPLR its ordinary meaning, it is sufficiently broad to cover the constitutional limitations. Moreover, so interpreted, section 716 is unquestionably valid.
In summary, on this issue, since the nonprofitmaking hospital is so affected with a profound public interest directly related to the health and lives in the community, and is so dependent on governmental subsidies, reimbursements, and exemptions, there is no doubt that the extraordinary provision for compulsory arbitration is constitutionally justified. On the same rea *511 soning, however, the limited review of awards indicated, but no less than such review, is both warranted and sufficient.
The hospital, by way of added argument, attacks the statute as a violation of equal protection of the laws because it applies only to nonprofitmaking facilities.
The hospital, however, fails to demonstrate that there is no difference in the history of labor disputes concerning nonprofit-making hospitals as compared to proprietary ones, or that the threat or disruption in the proprietary hospitals is equally severe. The Legislature, moreover, may have felt that different treatment was necessary, or justified, because of the special tax incentives afforded nonprofitmaking hospitals, or the absence of a profit motive in their continued operations. In any event, there is no evidence that the distinction was entirely arbitrary or invidious (cf. Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert. den. 360 U. S. 902). On the other hand, one may take judicial notice from the current scene, the long-standing difference in statutory treatment long before the present statute, and the incidence and kind of litigation involving nonprofitmaking and proprietary hospitals, that the' classification is reasonable.
Accordingly, the order should be affirmed without costs.

. Held invalid as to interstate commerce (Henderson v. State, 65 So. 2d 22).

. The Pennsylvania statute covering publicly employed policemen and firemen and the related case are irrelevant (43 Pa. Stat., § 217.7, subd. [a]; Washington Arbitration Case, 436 Pa. 168). Obviously, there are no due process constitutional limitations on a State legislating restrictions on itself or its creature subdivisions. Pennsylvania evidently recognized the difference in private employment by providing for judicial review in public utility labor arbitrations as in the statute cited above.

. Held invalid in Bus Employees v. Wisconsin Bd., 340 U. S. 383 (supra).

. Davis, who regards the Ben Avon doctrine as dead, at the same time that he regards the substantial evidence requirement as a saving substitute, has said in this connection: “But if the Constitution may sometimes require a limited judicial review and may sometimes permit a denial of all review, what is the governing principle? One answer to this question is that the cases do not answer this question. Indeed, the opinions of the Supreme Court in recent decades are completely devoid of any formulation of principle concerning the constitutional minimum of review.” (id., § 28.19, at p. 102). Then, in attempting his own formulation he suggests: “In trying to see in perspective the entire body of Supreme Court holdings on unreviewability, an examination of the impact of governmental programs is helpful. Just as one may readily subscribe to the idea that review may be denied of the award of government gratuities or bounties, perhaps a court can more easily deny review of a withholding of administrative assistance from those who are beneficiaries of government programs than it can deny review of administrative enforcement of obligations upon those who are subjected to the disadvantage of government programs. The distinction is quite different from that between gratuities and obligations, or that between privileges and rights; the distinction is partly between legal rights of one kind and legal rights of another kind. Applying the distinction to a rate case could mean that a ratepayer who is disappointed that the government does not help him more by prescribing a lower rate may be denied review, but that the utility which is aggrieved by an order imposing an obligation to charge a low rate may not be denied review of questions of law, procedure, and substantial evidence. Similarly, an employee who is refused an award of workmen’s compensation could be denied review, but the employer could not be denied a limited review of an award. In the context of the Switchmen’s Union case [320 U. S. 297], the union that was disappointed in its hope to get the benefit of enforced collective bargaining could be denied review of an order certifying another union, but an employer could not be compelled to bargain with the certified union unless he is allowed a limited judicial review of the certification order.” (id., § 28.19, p. 103).