Fuchsberg, J.
By these proceedings, originally brought pursuant to CPLR article 78 against the Buffalo Police Benevolent Association (PBA), the State Public Employment Relations Board (PERB) and the members of an ad hoc public arbitration panel, the City of Buffalo sought to vacate a determination by which the panel had granted a salary increase to the police bargaining unit represented by the PBA.* The Appellate Division vacated the award because it concluded that the city was without the means to fund the increase.
The genesis of the proceedings were collective bargaining negotiations for a new contract between the city and the PBA for the fiscal year July 1, 1975 through June 30, 1976. After all attempts, including mediation and fact finding, to resolve an impasse in their negotiations had failed to resolve their differences, the dispute was referred for compulsory binding arbitration by a public panel in accordance with the procedures set forth in section 209 (subd 4, par [c]) of the Civil Service Law.
After entertaining extensive proof and argument proffered by both sides, the panel awarded a 5% salary increase retroactive to July 1, 1975. In doing so, it rejected the PBA’s demand for a 10% increase and an improvement in other conditions of employment; it also thereby rejected the fact finder’s earlier recommendation, unacceptable to both parties, that the police *766 be granted a $50 increase in uniform allowance and a nonrecurring salary bonus in an amount equivalent to 6% of base salary.
Although the Appellate Division confined itself to a consideration of proof of the financial ability of the public employer to pay (Civil Service Law, § 209, subd 4, par [c], cl [v], subcl [b]), considerable evidence had been presented to the panel and, earlier, to the fact finder, whose findings of fact and recommendations for settlement go to the panel, on a variety of issues. Included in that presentation was proof on such other vital issues as the comparability of the benefits received by the employees involved in the arbitration proceeding with those of similar employees in public or private employment in comparable communities, the training hazards peculiar to police work and other such matters to which the statute also specifically directed the attention of the panel (Civil Service Law, § 209, subd 4, par [c], cl [v], subcls [a], [c], [d]).
Before further alluding to the considerations which may have motivated the panel, we note that the source of judicial power to review findings in compulsory interest arbitrations conducted under subdivision 4 of section 209 is not to be found in the statute, which itself is completely silent on the matter, but rather in the requirements of due process, so "that the contract imposed by the arbitrator under the power conferred by statute have a basis not only in his good faith, but in law and the record” (Mount St. Mary’s Hosp. v Catherwood, 26 NY2d 493, 507).
For such purposes there must be a sufficient form of review. Thus, since the statute here contains detailed standards which are to be considered, though only "so far as [the panel] deems them applicable,” "in arriving at [its] determination” (Civil Service Law, § 209, subd 4, par [c], cl [v]), it is appropriate to review whether that requirement has been followed (Matter of Guardian Life Ins. Co. v Bohlinger, 308 NY 174, 183). And, since, as we only recently had occasion to make clear, "the essential function of these compulsory arbitration panels is to 'write collective bargaining agreements for the parties’ (Mount St. Mary’s Hosp. v Catherwood, 26 NY2d 493, 503, supra), * * * [i]t follows that such awards, on judicial review, are to be measured according to whether they are rational or arbitrary and capricious in accordance with the principles articulated in Mount St. Mary’s Hosp. v Catherwood (supra) (see *767 CPLR 7803, subd 3, for parallel language)” (Caso v Coffey, 41 NY2d 153, 158).
Turning now to the three-man panel’s determination in this case, both the majority and minority opinion and a voluminously documented record reveal that the PBA introduced considerable evidence that, among other things, the wages, hours and working conditions of a Buffalo police officer compare unfavorably with those in contiguous or other comparable areas, that his services must be performed on a police force of diminishing size in the face of the growing hazards of an increasing crime rate and that an unusually high rise in the cost of living in the Buffalo area had substantially reduced the employees’ real wages.
The city did not seriously dispute these contentions, but relied on proof of property abandonment, shrinking tax collections, fleeing population and industry, high unemployment and a declining tax rate base, all of which, it contended, combined to compound the city’s financial problems. However true, this picture did not go uncontroverted. On this issue, the PBA introduced analyses and proof of its own so that the record reveals important differences between the parties on the probability and amount of a projected increase in sales tax, on the anticipated availability of Federal funds under the Public Works and Economic Development Act of 1965, on State revenue sharing, on the city’s residual tax ability and on other fiscal measures available to it.
In the end, the panel came to the conclusion that "the fiscal problems of the City must be weighed against the services performed by a police officer”. In making its award, it went on to state that "Buffalo police officers can surely be asked to share in this fight, but cannot be expected to bear the full burden of the City’s fiscal problems”.
On this record, it cannot be said that the panel’s award was irrational. It was within its province, under the applicable statute, not only to judge the facts but choose the priorities which, in its judgment, some matters were entitled to over others. It had a right to balance the ability of the city to pay against the interest of the public and the PBA members. Under subdivision 4 of section 209 the panel is the one to determine what constitutes "a just and reasonable determination of the matters in dispute” (§ 209, subd 4, par [c], cl [v]). It was therefore for it, and not for the courts, to decide what weight to give to each matter vis-á-vis the others.
*768 It could, be argued that a finding of the city’s ability to pay based on expectations of increased revenue sharing, or even the availability of grants under Federal public works programs, might be so speculative as to approach irrationality. Even were that position to be accepted, there here remain other identified, nonspeculative sources of additional revenue. Beyond any such analysis, however, and most significant, it must be recognized that the statute, the wisdom of which it is for others to decide, vests broad authority in the arbitration panel to determine municipal fiscal priorities within existing revenues. Thus, even if the statute were to mandate consideration of municipal ability to pay (rather than as at present only to identify ability to pay as one of the factors to be taken into consideration "so far as it deems them applicable”), the panel would still be confronted with responsibility and vested with authority to determine priorities among all relevant factors in a balancing process. The panel might determine that a particular increase in compensation should take precedence over other calls on existing or even diminishing municipal revenues.
The reviewing court could only inquire whether there was support based on all the statutory criteria. The economic evidence was received in relation to all the "matters in dispute”. It was the judgment of the majority of the panel that the evidence relating to comparability and other matters dehors the city’s ability to pay was such as to require increases in salary. Ability to pay was only one of the considerations to be weighed by the panel. The applicable statute, reading as it does, empowered the arbitrators to conclude that it was not dispositive. What must be assumed is that the city’s ability to pay was considered; the opinion of the panel demonstrates a reasonable basis for its determination.
Conceivably, rare circumstances might arise when the cost of a particular award, when taken against particular economic conditions in a municipality and other relevant factors, would, on review, be found to be irrational. But this is not such a case. Here the Appellate Division should not have drawn its own conclusions from the weight of the evidence or substituted its judgment for that of the arbitrators.
Accordingly, the order of the Appellate Division should be reversed and the award of the arbitrators reinstated, without costs.
*769 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order reversed, etc.

 Pursuant to CPLR 7804 (subd [g]), Special Term transferred the proceeding to the Appellate Division which, correctly treating it as one under article 75, properly dismissed it against PERB and the panel (see Caso v Coffey, 41 NY2d 153, 156, 160).