OPINION OF THE COURT
Anne G. Feldman, J.
Petitioner’s motion to vacate the arbitrator’s award of December 11, 1978, is granted.
*843 The facts, as found by the arbitrator, appear to be undisputed. On February 11, 1977, respondent, Grace Ambrosio, while intending to board a bus owned and operated by petitioner, fell and was injured when the heel of her shoe became caught in a defect in the sidewalk. She testified that as she approached the bus, the driver acknowledged her presence and indicated he would wait for her to board at the bus stop. Respondent also testified that she was three feet from the bus when she fell.
The transit authority denied respondent’s claim for no-fault benefits on the grounds that Mrs. Ambrosio was not a "covered person,” defined in subdivision 10 of section 671 of the Insurance Law as one "injured through the use or operation” of the insured vehicle. Thereafter, the matter was submitted for arbitration in accordance with subdivision 2 of section 675 of the Insurance law. The arbitrator awarded respondent $1,957.45 for medical expenses and $1,950 for reasonable attorney’s fees.
Petitioner now moves to vacate the award.
The first issue before this court is the standard of judicial review to be applied to an arbitration award.
CPLR 7511 (subd [b], par 1, cl [iii]) authorizes judicial vacatur of arbitration awards where the arbitrator has "exceeded his power”. Petitioner claims that the arbitrator exceeded his power by ignoring legal precedent, thus rendering his award without a rational basis.
When most arbitrations were voluntary, courts generally would not vacate awards solely because they were legally incorrect, but would vacate only those which were clearly irrational. (Lentine v Fundaro, 29 NY2d 382.) However, with the growing number of statutes mandating compulsory, binding arbitration, courts determined that due process required broader judicial review of awards resulting from compulsory arbitration, since claimants were denied access to the courts in the first instance. (See Matter of Garcia v Federal Ins. Co., 61 AD2d 236, revd on other grounds 46 NY2d 1040.)
In Mount St. Mary’s Hosp. of Niagara Falls v Catherwood (26 NY2d 493, 508), a challenge to the constitutionality of a statute mandating compulsory arbitration of disputes between hospitals and labor unions, the Court of Appeals observed that arbitration is a "substitute for a determination * * * by an administrative or regulatory agency”, and cannot be con *844 ducted under a lower constitutional standard than would be required of an agency. Thus, judicial review of an award resulting from compulsory arbitration is governed by the same rule applicable to a review of a decision of an administrative agency; that is (supra, p 508), "whether the award is supported by evidence or other basis in reason, as may be appropriate, and appearing in the record.”
In Caso v Coffey (41 NY2d 153, 158), the court likened the standard for judicial review of arbitrations to that for review of CPLR article 78 proceedings, and elaborated on the test set forth in Mount St. Mary’s Hosp. (supra): "An award may be found on review to be rational if any basis for such a conclusion is apparent to the court * * * And it need only appear from the decision of the arbitrators that the criteria specified in the statute were 'considered’ in good faith and that the resulting award has a 'plausible basis’.” Most recently, in Matter of Garcia v Federal Ins. Co. (46 NY2d 1040, 1042, supra), the Court of Appeals declined to set aside an arbitration award because the award did "not construe the statute” but "merely resolve[d] its application as between the parties”. Garcia has no application here.
This court finds, on the record before it, that the arbitrator clearly did misconstrue the statute by determining respondent to be a "covered person.” Therefore, under the standard set forth in St. Mary’s Hosp. and Caso (supra), the court finds that the decision of the arbitrator lacks a rational or plausible basis in law.
In his decision, the arbitrator reasoned that had Mrs. Ambrosio fallen at home while preparing to leave and walk toward the bus stop, she could not claim eligibility for no-fault coverage on the grounds that she intended to board the bus sometime in the future. However, "at the other end of the spectrum,” if respondent were injured while a passenger on the bus, she clearly would be entitled to coverage. The instant case, according to the arbitrator, fell into a "penumbra” between the two situations. He reasoned that because the driver was aware of respondent and waited for her at the bus stop with the doors open, he extended to her an "invitation to board.” Therefore, because of the "unity of mind” between the driver and the "incipient passenger,” the arbitrator found that the injuries arose from the "use and operation” of the insured vehicle. There are no reported decisions directly on point; *845 however, in analogous cases, courts have defined what constitutes "use” of a motor vehicle.
In Matter of Aetna Ins. Co. v Espinosa (92 Misc 2d 200), no-fault benefits were denied to a claimant who was struck while returning to his car. The court observed that although the claimant was standing only two or three feet from his car when the accident occurred, "[t]he mere fact that his intention was to return to use the automobile”, was insufficient to constitute "use” (Matter of Aetna Ins. Co. v Espinosa, supra, at p 203).
In a similarly reasoned decision, no-fault benefits were denied to a claimant who was struck while returning to his parked car. The court held that a "pedestrian cannot be converted into a user by virtue of the close proximity to his vehicle. Intention to use is not synonomous with use.” (Thomas v Travelers Ins. Co., 87 Misc 2d 136, 139, aifd 54 AD2d 608; emphasis added.) The decision also stated three criteria which must be met to find "use or operation” of a motor vehicle (supra, p 138):
"(1) did the accident arise out of the inherent nature of the automobile as such;
"(2) did the accident occur within the territorial limits of the automobile and the actual use, loading or unloading, must not have terminated [sic]; and
"(3) the automobile must not have merely contributed to the cause of the condition but itself must produce or be a proximate cause of the injury.
Here, none of these criteria can be answered in the affirmative. On the record before this court, Mrs. Ambrosio’s injuries were caused by a fall due to a defective sidewalk and totally unrelated to the actions of the bus driver. Although the driver waved to respondent, indicating that he would wait for her to board, his actions were insufficient to constitute an intervening cause which would place liability on petitioner. Mrs. Ambrosio’s actions in running toward the bus, intending to board, are insufficient under Aetna to transform her into a "covered person.” The arbitrator’s characterization of Mrs. Ambrosio as an "incipient passenger” has no basis in any legal precedent known to this court and is insufficient to justify holding the transit authority responsible for respondent’s injuries.