NOEL GRIFFITH et al., Appellants-Respondents, v HOME INDEMNITY COMPANY, Respondent-Appellant.

First Department, January 19, 1982

APPEARANCES OF COUNSEL

*Sherwin Rear* of counsel (*Simon & White,* attorneys), for respondent-appellant.

*Gary Sinawski* of counsel (*Kresky, Sinawski & Davis* and *Stillman & Spiegel, P.C.,* attorneys), for appellants-respondents.

### OPINION OF THE COURT

BLOOM, J.

This appeal poses one of the unsolved problems which has resulted from the enactment of the Comprehensive Automobile Insurance Reparations Act, commonly known as the "no-fault" law (Insurance Law, art 18, §§ 670 *et seq.*).

Plaintiff Griffith was injured in an automobile accident which occurred on April 4, 1976. He was, at the time, a passenger in a vehicle insured by defendant Home Indemnity Company (Home). Griffith filed a claim with Home for first-party benefits. The matter proceeded to arbitration and Griffith was awarded the sum of $12,087 by the

arbitrator. His coplaintiffs Stillman & Spiegel, P.C., who had been retained by him as counsel, were awarded a fee of $2,500.

Home refused to pay the award, contending that a substantial portion of Griffith's loss of earnings were attributable to causes not related to the accident. On July 28, 1977 Griffith's attorneys entered judgment on the award, ex parte, apparently on the theory that regulations governing "no-fault" insurance promulgated by the Superintendent of Insurance authorized such procedure. Home moved to vacate the judgment. Griffith cross-moved to confirm the award. Special Term properly noted that the regulations could not supersede the provisions of CPLR article 75. Accordingly, it vacated the judgment. With respect to the cross motion to confirm the award it held that while Home "raises serious questions as to the conduct of the arbitrator subsequent to the hearing, and the claimant's credibility as to his injuries, the arbitrator's award will not be disturbed in the absence of a showing of fraud and misconduct. In the absence of complete irrationality, an arbitrator may fashion the applicable rules and determine the facts of a dispute before him without his award being subject to judicial interference (see Lentine v. Fundaro, 29 N Y 2d 382)". The award was confirmed. Appeal was taken from the judgment entered upon the award. However, that appeal was never perfected and, on motion, it was dismissed. After the issuance of execution, the judgment was paid.

Thereupon Griffith's attorneys interposed a claim for "postaward" legal services, i.e., for services rendered in connection with the entry of judgment, the proceedings in this court and the collection of the judgment. Home refused to honor the claim and demand was made for arbitration. Subsequent to the arbitration hearing the arbitrator rendered an award in favor of counsel in the amount of $11,475. Home again refused to pay. This time, however, it moved to vacate the award. Special Term granted the motion holding, under *Mount St. Mary's Hosp. of Niagara Falls v Catherwood* (26 NY2d 493) that where arbitration is mandated by law and does not flow from a contract voluntarily entered into by the parties, the validity of an award must find its basis in the good faith of the arbitrator,

in the law and in the record before him. It noted that "the award * * * appears to be so thoroughly unreasonable as to warrant an order vacating [it]." It directed that the matter be resubmitted to the arbitrator.

Thereafter the matter was again submitted to arbitration, this time before another arbitrator. The arbitrator found the services of counsel to be worth the sum of $11,000. However, he held that Home was entitled to an offset of $835 leaving a balance of $10,165 for which he rendered an award in favor of plaintiffs. While the figures set forth in the award are somewhat confusing, if we accept the basis offered by the arbitrator for the offset the net award is correct.

Plaintiffs moved at Special Term to confirm the award. Defendant opposed. Special Term concluded that the services upon which the arbitrator bottomed his award appeared to be substantially exaggerated and that some of the services appeared to be unnecessary. It denied the motion to confirm, vacated the award and remanded the matter for a hearing before another arbitrator, unless plaintiffs agreed to accept a reduced award in the sum of $5,500. In the event that plaintiffs so agreed, the award, as so modified, was confirmed. Plaintiffs have not stipulated to accept the award as reduced and both sides have appealed. Since we agree in large part with the evaluation of counsel's services made by Special Term — indeed there are some among us who are of the opinion that it was quite generous in its appraisal of those services — it is with reluctance and not without misgivings, that we modify to grant plaintiffs' motion and confirm the award.

I

"No-fault" became part of the law of this State by chapter 13 of the Laws of 1973. Both the memorandum of Governor Rockefeller approving the law (NY Legis Ann, 1973, p 298) and the Stewart Report[*] which laid the basis for the legislation make it evident that one of the major purposes of the act was to "eliminate the vast majority of auto accident negligence suits thereby freeing our courts

[*] Report to Governor Nelson A. Rockefeller by Superintendent of Insurance Richard E. Stewart made in 1970 entitled State of New York Insurance Department AUTOMOBILE INSURANCE — FOR WHOSE BENEFIT?

for more important tasks" (for a somewhat critical view of the purpose and potential effect see Note, No-Fault Insurance in New York: Another Hazard for the Innocent Driver, 40 Brooklyn L Rev 689, and particularly pp 698-700). To that end application of the law was intended to be as automatic as possible.

As time progressed it was noted that, in certain areas, the statute did not accomplish the announced purpose of limiting litigation. As these areas became apparent endeavor was made to eliminate them. Thus, in 1977, subdivision 4 of section 671 of the Insurance Law was amended to eliminate the threshold amount of $500 and "serious injury" was redefined in terms of the nature of the injury and its disabling effect (L 1977, ch 892, § 8).

Similarly, subdivision 2 of section 675 of the Insurance Law was amended (L 1977, ch 892, § 13) to add the following paragraph: "An award by an arbitrator may be vacated or modified by a master arbitrator in accordance with simplified procedures to be promulgated or approved by the superintendent. The grounds for vacating or modifying an arbitrator's decision by a master arbitrator shall not be limited to those grounds for review set forth in article seventy-five of the civil practice law and rules. The decision of an arbitrator shall be binding except where vacated or modified by a master arbitrator. The decision of a master arbitrator shall be binding except for the grounds for review set forth in article seventy-five of the civil practice law and rules, and provided further that where the amount of such master arbitrator's award is five thousand dollars or greater, exclusive of interest and attorney's fees, the insurer or the claimant may institute an action in a court of competent jurisdiction to adjudicate the dispute de novo."

## II

With this as a background, we come to an analysis of the claim here involved and the law applicable thereto.

Under subdivision 1 of section 675 of the Insurance Law, Griffith was entitled to an attorneys' fee for legal services rendered to him in connection with the establishment of his claim against Home (*Kurcsics v Merchants Mut. Ins.*

*Co.*, 49 NY2d 451). Under the regulations regulating such fees they are based upon the reasonable value of the services rendered (11 NYCRR 65.6 [h] [1]) and need not bear any relationship to the amount in dispute. Thus, an arbitration involving a balance of $75 due on a dental bill resulted in an award of $1,050 as counsel fee (*Matter of Country-Wide Ins. Co. [Barrios]*, 43 NY2d 685). Indeed, the Court of Appeals has gone further and has held that an attorney is entitled to a fee for services rendered by him in substantiating *his* claim for services (*Matter of Fresh Meadows Med. Assoc. [Liberty Mut. Ins. Co.]*, 49 NY2d 93).

Here, the problem arises not from the right to the fee, but from the amount thereof. Bearing in mind one of the announced purposes of the law — to eliminate litigation — it is obvious that the reason for the enactment of the 1977 amendment, with its master arbitrator clause was to require disputes over an arbitrator's award to be disposed of without involvement of the courts. While the jurisdiction of a master arbitrator, in reviewing an *award made to an injured party* is limited (11 NYCRR 65.17 [a] [1], [2], [3], [4]), the reason therefore is apparent. If the award is substantial — $5,000 or greater — exclusive of interest and attorneys' fees — either party may have recourse to the courts to litigate the matter *de novo*. No such right exists when the matter in issue is counsel fee. Hence the scope of the master arbitrator in reviewing an award of counsel fee is correspondingly greater. He may set aside such an award upon the ground that it was improperly rendered as provided by 11 NYCRR 65.17 (a) (5) (*Matter of Petrofsky v Allstate Ins. Co.*, 54 NY2d 207). While *Petrofsky* does not give precision to the term improperly rendered we construe it to mean that the master arbitrator has authority to review an award of counsel fee to determine whether the services alleged to have been rendered were, in fact, rendered and were necessary and whether the basis for computation of the value of such services is in accordance with the rules and regulations.

Here, Home applied to Special Term for a factual review of the need for the services and the value thereof. Under CPLR article 75 that court had no power to engage in that review. However, Home failed to apply to the master

arbitrator who did have such authority. Home's failure to utilize the machinery devised by statute and regulation to deal with the problem was violative of the statutory scheme. It thereby deprived itself of the right to seek modification of the award.

The order of the Supreme Court, Bronx County (DiFEDE, J.), entered January 16, 1981 is modified on the law to the extent of confirming the arbitrator's award *in toto,* without costs.

SANDLER, J. P., SULLIVAN, CARRO and MARKEWICH, JJ., concur.

Order, Supreme Court, Bronx County, entered on January 16, 1981, unanimously modified, on the law, to the extent of confirming the arbitrator's award *in toto,* without costs and without disbursements.