**UNITED STATES of America, Plaintiff,**

**v.**

**AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS, Defendants.**

**In the Matter of the Application of Steve KARMEN, Petitioner,**

**For an Order Vacating an Award.**

**No. Civ. 13–95(WCC).**

United States District Court, S.D. New York.

March 30, 1989.

Parcher Arisohn & Hayes, P.C., New York City, for petitioner; Elizabeth C. McNicoll, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City; Jay Topkis, Allan Blumstein, David E. Nachman, David S. Nalven, of counsel; and Bernard Korman, New York City, for American Soc. of Composers, Authors and Publishers (ASCAP).

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This application is within the Court's continuing jurisdiction over a consent judgment, originally entered on March 14, 1950, and subsequently amended (the "Consent Decree"). Petitioner Steve Karmen ("Karmen") seeks to vacate the decision of a panel of arbitrators, (the "Panel"), claiming that the procedure followed by the Panel violated his rights under the due process clause, U.S. Const. amend. 5, and New York law, N.Y.Civ.Prac.L. & R. § 7501 *et seq.* (McKinney 1980) ("Article 75"). For the reasons set forth below, I reject Karmen's due process claim, and remand to the Panel to assure their compliance with the requirements of Article 75.

## FACTUAL BACKGROUND

Karmen is a writer of "jingles" and a member of the American Association of Composers, Authors and Publishers ("AS-CAP"). Persons such as Karmen join AS-CAP so that their creative works may be licensed and they may share in the profits produced from such licensing. The percentage of profits that a member receives is based on the type of performance in which he engages. This system of distribution and classification is explained in AS-CAP's Articles of Association.

Petitioner's underlying dispute with ASCAP centers on the decision to allocate three percent of a "use credit" per performance to jingle writers. In accordance with ASCAP's Articles of Association, petitioner's grievance was heard in the first instance by the Board of Review (the "Board"). *See* ASCAP Articles of Association § 6B. The Board is composed of other members of ASCAP. Before this body, petitioner was represented by counsel, called and examined a number of witnesses, and presented several exhibits. In a twenty-six page decision, the Board rejected Karmen's claim.

Having failed to gain relief from the Board, petitioner then exercised his Section 6B right to present his claim to the Panel.

The Panel denied petitioner's request to rehear the entire case, and instead, reviewed the Board's decision by examining the record of the proceedings produced below and by hearing the testimony of the Board's chairperson. The inclusion of the chairperson's testimony was pursuant to Section 6C(4) of the Articles of Association. On March 7, 1988, the Panel affirmed the decision of the Board.

Petitioner filed an action in state court to vacate the decision of the Panel. However, because of this Court's continuing jurisdiction over the Consent Decree, the state matter was withdrawn by stipulation, and the instant application was made to this Court.

## DISCUSSION

### I. Due Process

■ Petitioner claims that his due process rights were violated by ASCAP's method of dispute resolution. Without even considering the process afforded Karmen by ASCAP, I must disagree. Petitioner has failed to demonstrate any state action which would trigger the applicability of the due process clause.

■ Karmen argues that the Court's approval of the Consent Decree, which requires ASCAP to establish the grievance procedure it has used, constitutes sufficient state action to mandate constitutional protection. In support of this contention, petitioner cites, *Mount St. Mary's Hospital v. Catherwood*, 26 N.Y.2d 493, 260 N.E.2d 508, 311 N.Y.S.2d 863 (1970). Karmen's reliance on this case is misplaced. In *Mount St. Mary's* the court had ordered that the party must engage in arbitration; here the court merely approved the use of an arbitration procedure by a private party with that party's overt acceptance. As the court in *Mount St. Mary's* explained:

The simple and ineradicable fact is that voluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations if compelled by

government, must accord with procedural and substantive due process.

26 N.Y.2d at 500, 260 N.E.2d at 511, 311 N.Y.S.2d at 867. Both ASCAP and Karmen consented to this process, ASCAP in the Consent Decree and Karmen in the Agreement of Membership that he signed to become a member of ASCAP. The mere approval by this Court of the use of arbitration did not create any state action. Indeed, under Karmen's strained interpretation of *Mount St. Mary's*, all arbitrations could be subject to due process limitations through the simple act of appealing the arbitrators' decisions to the court system. Such a situation would negate the purpose of Article 75, which has long had an independent function.

Although the federal government was a party to the Consent Decree which resolved an antitrust suit against ASCAP, the government has maintained no function in ASCAP's grievance procedures for disputes with its members. The Board is a completely internal body, subject only to appeal to the Panel of arbitrators who are chosen subject to the Rules of the American Arbitration Association. *See* Articles of Association § 6D.

Likewise, I must reject petitioner's contention that ASCAP's function is such that this Court should look beyond its seemingly private nature and find it "to be in fact clothed with the mantle of the state." *Duva v. World Boxing Association*, 548 F.Supp. 710, 716 (D.N.J.1982). Unlike two of the cases upon which Karmen relies, *Duva, supra,* and *Garafano v. United States Trotting Association*, 78 Misc.2d 33, 355 N.Y.S.2d 702 (1974), the defendant ASCAP is neither an association of public bodies nor a "quasi-public ... body ... intertwined with state-sponsored [events]. ..." *Garafano*, 78 Misc.2d at 38, 355 N.Y. S.2d at 708. Nor is ASCAP "private[ly] perform[ing] a government function." *Duva*, at 716 (quoting *Magill v. Avonworth Baseball Conference*, 516 F.2d 1328, 1331 (3d Cir.1975)). ASCAP was formed and still functions as a voluntarily constructed group with the aim of enforcing and licensing music copyrights and distributing profits among its members. Petitioner has not demonstrated, and I fail to see, how ASCAP's mechanism of collecting royalties and distributing profits for private benefit could be construed as a government function.

## II. CPLR Article 75

The issues presented by petitioner's Article 75 claim are more vexing. Although I do not agree with ASCAP's ultimate conclusion that the Articles of Association do not provide for an "arbitration" within the meaning of Article 75, ASCAP is correct that the bulk of Article 75 is not applicable to the type of proceeding contemplated by the Articles of Association. The language and structure of Article 75 with its requirements for notice of hearing and presentation of evidence, for example, clearly seem applicable to first-instance fact-finding proceedings. The Articles of Association suggest that the Panel is to act as an appellate body. Section 6B provides that a member must "file[ ] a notice of appeal" for the "evidence taken before the Board of Review [to be] referred to the Panel." The member is consistently addressed as "appellant" throughout the Section.

The appellate role of the Panel, however, does not remove the proceeding from the ambit of an "arbitration" within the meaning of Article 75. Article 75 contemplates that arbitrators, when hearing an appeal, have the power to hear the case on a limited trial *de novo* basis:

> Where parties submit to arbitration under the rules of an association which provide for appeal within the arbitral institution, "new or additional proof taken by the appellate body cures the error of arbitrators in refusing to accept proof in the first instance." The appeal is in the nature of a trial *de novo* based upon the prior record and new evidence—much like an old appeal in equity.

8 J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 7506.16 (1988) (footnote omitted).

At equity, the appellate court was empowered both to reevaluate the factual findings of the court below, giving some deference on issues involving credibility,

and to resolve the matter finally without a remand. However, the equity court did not have the power to rehear the evidence received at trial. In this regard, the appeal at equity functioned as a limited trial *de novo*. *See* H. McClintock, *Principles of Equity* 40 (1948); Orfield, *Appellate Procedures in Equity Cases*, 90 U.Pa.L.Rev. 563, 569–80 (1942).

A limited trial *de novo* is distinct from the full trial *de novo* sought by petitioner, in which all the evidence is reheard and reevaluated, and the ordinary appellate review that respondent contends is applicable, in which the determinations of fact of the body below are accepted unless it appears from the record that they are clearly erroneous. The middle ground offered by the limited trial *de novo* is what both the Articles of Association and Article 75 contemplated as the proper role of the Panel when considering an appeal.[1]

 Unfortunately, I can find no indication that the Panel knew of their power to hear improperly excluded evidence or to reevaluate the Board's findings of fact. The transcript is devoid of any indication of their understanding in this regard. The Panel's decision to proceed as they did only shows reliance on the Articles of Association and gives no indication that they were aware of their independent power to correct the improper exclusion of evidence or to disagree with factual findings:

> It is the decision of the panel that we are operating under the rules of the articles of association of ASCAP, that we sit as ... an appellate board, to review the decision of the board of review basically on the evidence adduced at the board of review hearings which have been transcribed together with the exhibits.

Panel Transcript at 79–80.

I thus remand this matter to arbitration for further consideration.[2] The Panel should reconsider this matter with the understanding that it has the authority to re-evaluate the factual findings of the Board and to receive any evidence that was improperly excluded in the proceedings before the Board.

### CONCLUSION

For the reasons stated above, petitioner's application to vacate the arbitration award is granted in part. The matter is remanded and the Panel is directed to proceed in a manner not inconsistent with this Opinion.

SO ORDERED.

---

1. Other arbitration panels hearing appeals have reached the conclusion that their scope of review should be a full trial *de novo*. *Dembitzer v. Gutchen*, 3 A.D.2d 211, 159 N.Y.S.2d 327, *aff'd* 3 N.Y.2d 851, 144 N.E.2d 728, 166 N.Y.S.2d 85 (1957) is inapposite because the court's approval of the decision to proceed with a full trial *de novo* was mandated by the by-laws of the association. *M.R. Glass v. Auto Dealers Association, Inc.*, 49 Misc.2d 263, 267 N.Y.S.2d 307 (Sup.Ct. 1966) is similarly unpersuasive.

2. It is probably the case that efficiency would be served by this matter returning to the three arbitrators that heard it originally. I realize, however, that this may not be possible. Therefore, this matter may be completely reconsidered with a newly constituted panel.